## KANE v. STATE OF NEW JERSEY.

ERROR TO THE COURT OF ERRORS AND APPEALS OF THE STATE OF NEW JERSEY.

No. 51. Argued October 31, 1916.—Decided December 4, 1916.

In regulating the use of motor vehicles upon its highways, (*Hendrick* v. *Maryland*, 235 U. S. 610), a State may require nonresident owners to appoint a state official as agent upon whom process may be served in legal proceedings brought against them, and resulting from the operation of their motor vehicles, within the State.

A registration fee, not unreasonable in amount, which is exacted by a State from residents and nonresidents alike as a condition to the use of its highways by motor vehicles, is not a discrimination against the citizens of other States either (a) because the amount of the fee is fixed for each calendar year without reference to the extent

to which the highways are used, or (b) because the liability of non-residents to pay is not tempered by the allowance of any period of free use in reciprocation for like privileges allowed by the States in which they reside.

It is clearly within the discretion of the State to determine whether the compensation for the use of highways by automobiles shall be determined by way of a fee, payable annually or semi-annually, or by a toll based on mileage or otherwise.

The power of the State, in the absence of national legislation upon the subject, to regulate the use of its highways by motor vehicles moving in interstate commerce, applies as well to such as are moving through the State as to such as are moving into it only.

As applied to vehicles of nonresidents moving in interstate commerce as well as to vehicles of residents, the amount of the registration fee may properly be based not only on the cost of inspection and regulation, but also on the cost of maintaining improved roads. *Hendrick* v. *Maryland, supra,* explained and followed.

81 N. J. L. 594, affirmed.

THE case is stated in the opinion.

*Mr. John W. Griggs* and *Mr. Charles Thaddeus Terry* for plaintiff in error:

The history of the legislation, with § 37 of the statute, providing for the disposition of the moneys received, proves that the Legislature intended to impose the fees for revenue purposes. The record shows affirmatively that in a very short period the income was vastly in excess of the cost of registration and inspection. This was pure profit. In this important respect the case differs very materially from *Hendrick* v. *Maryland,* 235 U. S. 610, for there the fees were no more than sufficient to defray the cost of registration.

In the *Hendrick Case* it did not appear that a license to operate had been obtained in Maryland. The fact that Kane had such a license in New Jersey discriminates the two cases. In the former, the power of the State to regulate and therein to impose taxes for revenue was based upon the danger in the *operation* of motor vehicles as well

as their destructive effect upon roads, and not upon the
proposition that such vehicles are inherently dangerous
agencies, and as such subject to be regulated out of ex-
istence.   It being well settled that they do not bear that
character but are lawful vehicles, entitled to equal rights
on the highways (*Vincent & Seymour* v. *Crandall & Godley
Co.*, 131 N. Y. App. Div. 200; *Indiana Springs Co.* v.
*Brown* (Ind.), 74 N. E. Rep. 615; *Mason* v. *West*, 61 N. Y.
App. Div. 40; *City of Chicago* v. *Banker*, 112 Ill. App. 94),
it follows that they cannot be singled out to be specially
taxed for general revenue purposes.

The right to use the streets is a natural right of every
citizen which cannot be converted into a privilege by a
legislative fiat.

Again, in the *Hendrick Case* it did not appear, as here,
that there had been compliance as to license and registra-
tion, etc., with the laws of his own domicile by the owner
of the machine.   The record also did not contain sufficient
facts on which it could be determined that Hendrick was
engaged in interstate commerce.   The question raised here,
viz., whether the State may impose a pure tax upon a
vehicle of a nonresident for the use of its roads while he
is engaged in interstate commerce, was neither presented
nor decided in that case.   Maintaining roads is one of
the regular functions of government, and taxes to defray
the cost are like any other taxes levied to meet govern-
mental expenses generally.   Such taxes cannot be law-
fully imposed on interstate commerce.

The tax is not sustainable, like tolls or wharfage, as a
charge for the use of "artificial facilities."   The cases of
*Transportation Co.* v. *Parkersburg*, 107 U. S. 691, 699;
*Huse* v. *Glover*, 119 U. S. 543, 548, 549; *Monongahela
Navigation Co.* v. *United States*, 148 U. S. 312, 329, 330;
and authorities cited in the *Minnesota Rate Cases*, 230
U. S. 352, at p. 405, do not sustain it.   In the *Minnesota
Rate Cases* the charge was for tolls for the actual use of

the facility and proportioned to the amount of such user. Here the tax is imposed for registration of the vehicle whether there be any subsequent user or not, and quite irrespective of the extent of such user. See *Adams Express Co.* v. *City of New York,* 232 U. S. 14; *Muehlenbrinck* v. *Commissioners,* 13 Vroom, 364–368.

To impose the tax on motors alone would be an unlawful discrimination in favor of all other kinds of vehicles, such as express wagons and farm trucks, upon which the law lays no charge. See *Adams Express Co.* v. *City of New York, supra; Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis,* 165 U. S. 150; *Cotting* v. *Kansas City Stock Yards,* 183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Yick Wo* v. *Hopkins,* 118 U. S. 356.

To avoid such discrimination the charge should be based not on the character of the vehicle, but on the use of the road. The tax should apply to all classes using the special facilities (if such they can be regarded); and if it be considered a recompense for wear of roads, the fee should be adjusted in proportion to the damage done by each class.

The tax is not supportable as a tax upon occupation or privilege. The privilege of a citizen to pass from one State over the highways of another cannot be impaired by any state legislation. In this case the burden on interstate commerce is direct. Nonresidents have to pay a gross fee for the privilege of entering and traversing New Jersey.

In requiring of nonresidents the filing of a power of attorney to accept service, the law abridges the privileges of citizens of other States. This power of attorney is made a condition precedent to the right of passage. It thus discriminates against nonresidents, since residents are not so compelled to submit to jurisdiction in advance of legal proceedings.

The vehicle is not taxable in New Jersey as property;

its *situs* is elsewhere for direct taxation, and under the equal protection clause the people of all States are guaranteed the right of free ingress and egress, whether by motor or any other class of vehicle, without having their vehicles taxed.

*Mr. Herbert Boggs*, with whom *Mr. John W. Wescott*, Attorney General of the State of New Jersey, was on the brief, for defendant in error.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

The New Jersey automobile law of 1906, as amended in 1908 (P. L. 1908, p. 613), provides in substance that no person, whether a resident or nonresident of the State, shall drive an automobile upon a public highway unless he shall have been licensed so to do and the automobile shall have been registered under the statute; and also that a nonresident owner shall appoint the Secretary of State his attorney upon whom process may be served "in any action or legal proceeding caused by the operation of his registered motor vehicle, within this State, against such owner." The statute fixes the driver's license fee for cars of less than thirty horse power at two dollars and more than thirty horse power at four dollars. It fixes the registration fee at three dollars for cars of not more than ten horse power; five dollars for those from eleven to twenty-nine horse power; and ten dollars for those of thirty or greater horse power. Both license fees and registration fees, whensoever issued, expire at the close of the calendar year. The moneys received from license and registration fees in excess of the amount required for the maintenance of the Motor Vehicle Department are to be applied to the maintenance of the improved highways. Penalties are prescribed for using the public highways

without complying with the requirements of the act. The material portions of the statute are copied in the margin.[1]

Kane, a resident of New York, was arrested while driving his automobile on the public highways of New Jersey

---

[1] "Part IV.—THE OPERATION OF MOTOR VEHICLES.

\*     \*     \*     \*     \*     \*     \*     \*

"16.—(1) Every resident of this State and every nonresident, whose automobile shall be driven in this State, shall, before using such vehicle on the public highways, register the same, and no motor vehicle shall be driven unless so registered. Every registration shall expire and the certificate thereof become void on the thirty-first of December of each year; provided, it may be lawful for any automobile duly registered, to operate under said registration certificate for a period not exceeding thirty-one days after the expiration of said registration certificate. . . . The applicant shall pay the Commissioner of Motor Vehicles for each registration, a fee of three dollars for automobiles of the first class; five dollars for the second class; and ten dollars for the third class. Automobiles of ten horsepower or less, shall be of the first class; from eleven to twenty-nine horsepower, inclusive, of the second class; and of thirty horsepower or more, of the third class. . . . Each owner having a residence outside of the State shall file with the Secretary of State a duly executed instrument, constituting the Secretary of State, and his successors in office, the true and lawful attorney upon whom all original process in any action or legal proceeding caused by the operation of his registered motor vehicle, within the State, against such owner may be served, and therein shall agree that any original process against such owner shall be of the same force and effect as if served on such owner within this State; the service of such process shall be made by leaving a copy of the same in the office of the Secretary of State, with a service fee of two dollars, to be taxed on the plaintiff's costs of suit. Said Commissioner of Motor Vehicles shall forthwith notify such owner of such service by letter directed to him at the post office address stated in his application. . . .

"17.—No person shall hereafter drive an automobile upon any public highway in this State, unless licensed to do so in accordance with the provisions of this act. No person under the age of sixteen years shall be licensed to drive automobiles, nor shall any person be licensed to drive automobiles until said person shall have passed a satisfactory examination as to his ability as an operator. . . . There shall be two classes of drivers' licenses. Those authorizing the licensee to drive cars of less than thirty horsepower shall be of the first class, and those authorizing

and tried in the Recorder's Court. The following facts were stipulated: Kane had been duly licensed as a driver under the laws of both New York and New Jersey. He had registered his car in New York but not in New Jersey. He had not filed with the Secretary of State of New Jersey the prescribed instrument appointing that official his attorney upon whom process might be served. When arrested he was on his way from New York to Pennsylvania. The aggregate receipts from license and registration fees for the year exceeded the amount required to defray the expenses of the Motor Vehicle Department, so that a large sum became available for maintenance of the improved roads of the State. Kane contended that the statute was invalid as to him, a nonresident, because it violated the Constitution and laws of the United States regulating interstate commerce and also because it violated

---

the licensee to drive cars of thirty and greater horsepower shall be of the second class. The annual license fee to be charged shall be two dollars for drivers of the first class, and four dollars for drivers of the second class. . . .

$$* \qquad * \qquad * \qquad * \qquad * \qquad * \qquad * \qquad *$$

"Part X.—Miscellaneous.

"37.—Moneys received in accordance with the provisions of this act, whether from fines, penalties, registration fees, license fees, or otherwise, shall be accounted for and forwarded to the Commissioner of Motor Vehicles and by him paid over to the Treasurer of the State of New Jersey, to be appropriated annually to the Commissioner of Public Roads, to be used as a fund for the repair of the improved roads throughout the State, whether they had been originally built by State aid or not, and to be by the said Commissioner, apportioned once each year among the several counties of this State according to the mileage of improved roads in each county, the share apportioned each county to be used for the repair of improved roads in that county under the direction of the Commissioner of Public Roads or his authorized representatives, and to be paid in the same manner as State funds are now paid for the improvement of public roads. The term 'improved roads' as used in this section shall not include streets paved with cobble stones, Belgium block or asphalt."

the Fourteenth Amendment. These contentions were overruled; and he was fined five dollars. The conviction was duly reviewed both in the Supreme Court and by the Court of Errors and Appeals. The contentions were repeated in both of those courts; and both courts affirmed the conviction. *Kane* v. *New Jersey,* 81 N. J. L. 594. The case was brought here by writ of error.

The power of a State to regulate the use of motor vehicles on its highways has been recently considered by this court and broadly sustained. It extends to nonresidents as well as to residents. It includes the right to exact reasonable compensation for special facilities afforded as well as reasonable provisions to ensure safety. And it is properly exercised in imposing a license fee graduated according to the horse power of the engine. *Hendrick* v. *Maryland,* 235 U. S. 610. Several reasons are urged why that case should not be deemed controlling:

1. The Maryland law did not require the nonresident to appoint an agent within the State upon whom process may be served. But it was recognized in discussing it, that "the movement of motor vehicles over the highways is attended by constant and serious dangers to the public" (p. 622). We know that ability to enforce criminal and civil penalties for transgression is an aid to securing observance of laws. And in view of the speed of the automobile and the habits of men, we cannot say that the Legislature of New Jersey was unreasonable in believing that ability to establish, by legal proceedings within the State, any financial liability of nonresident owners, was essential to public safety. There is nothing to show that the requirement is unduly burdensome in practice. It is not a discrimination against nonresidents, denying them equal protection of the law. On the contrary, it puts nonresident owners upon an equality with resident owners.

2. The Maryland law contained a reciprocal provision by which nonresidents whose cars are duly registered in

their home State are given, for a limited period, free use of the highways in return for similar privileges granted to residents of Maryland. Such a provision promotes the convenience of owners and prevents the relative hardship of having to pay the full registration fee for a brief use of the highways. It has become common in state legislation; and New Jersey has embodied it in her law since the trial of this case in the lower court. But it is not an essential of valid regulation. Absence of it does not involve discrimination against nonresidents; for any resident similarly situated would be subjected to the same imposition. A resident desiring to use the highways only a single day would also have to pay the full annual fee. The amount of the fee is not so large as to be unreasonable; and it is clearly within the discretion of the State to determine whether the compensation for the use of its highways by automobiles shall be determined by way of a fee, payable annually or semi-annually, or by a toll based on mileage or otherwise. Our decision sustaining the Maryland law was not dependent upon the existence of the reciprocal provision. Indeed, the plaintiff in error there was not in a position to avail himself of the reciprocal clause; and it was referred to only because of the contention that the law discriminated between nonresidents; that is, that Maryland extended to residents of other States privileges it denied to residents of the District of Columbia.

3. In *Hendrick* v. *Maryland*, it appeared only that the nonresident drove his automobile *into* the State. In this case it is admitted that he was driving *through* the State. The distinction is of no significance. As we there said (622): "In the absence of national legislation covering the subject a State may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others."

4. In the *Hendrick Case* it did not appear, as here, that

the fees collected under the motor vehicle law exceeded the amount required to defray the expense of maintaining the regulation and inspection department. But the Maryland statute, like that of New Jersey, contemplated that there would be such excess and provided that it should be applied to the maintenance of improved roads. And it was expressly recognized that the purpose of the Maryland law "was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential and whose operations over them are peculiarly injurious."

The judgment should be

*Affirmed.*

MR. JUSTICE PITNEY took no part in the consideration or decision of this case.