Johnson, J.
The statute, the validity of which is attacked, provides for the levy and collection of an annual license tax on the operation of motor vehicles on the public roads and highways of the state, for the purpose of enforcing and paying- the expense of administering the law and of maintaining and repairing- public roads, highways and streets. The vehicles are classified by specific pro *135 visions of the act and the tax is graduated among the different classes.
It is contended that as the statute expressly provides that the tax is levied to pay the expense of administering the law and of maintaining and repairing the public roads, highways and streets, and as the petition alleges that the amount levied will largely exceed the cost of the administration and enforcement of the law, it is demonstrated that the law is one for the raising of general revenue, and, therefore, in conflict with Section 2, Article XII, of the Constitution, which provides that “laws shall be passed, taxing by a uniform rule,” all property at its true value in money. As to this it is sufficient to say that the terms of the act itself clearly disclose its character.
It is perfectly apparent that this statute is a tax or revenue measure. The taxes are raised for a specific object, namely, the maintenance and repair of the public roads. The tax is levied on the privilege of operating a motor vehicle on the public highways. The provisions in the law with reference to its administration, and with reference to regulation and registration of motor vehicles, are merely incidental police regulations which do not affect the main object intended. The law provides that all fees collected under the chapter shall be paid into the state treasury to the credit of a fund to be designated as a “state maintenance and repair fund.”
The granting of the license is the plan or detail provided for the imposing and collection of the tax. As held by the supreme court of the United States, *136 License Tax Cases, 5 Wall., 462, “the requirement of payment for such licenses is only a mode of imposing taxes on the licensed business, and the prohibition * * • * against carrying on the business without license is only a mode of enforcing the payment of such taxes.” Does the obvious fact that the law is a tax law, passed for the purpose of raising revenue for a certain specified purpose, render it obnoxious to the constitution?
It is urged that Section 2, Article XII of the Constitution, prescribes an exclusive method of raising taxes for general revenue. The power to tax is one of the highest attributes of sovereignty. Section 1, Article II of our Constitution, grants to the general assembly absolute legislative power.
In Southern Gum Co. et al. v. Laylin, 66 Ohio St., 578, at page 593, it was decided that “The absolute and unlimited power of taxation is granted by that section to the general assembly, and the taxation may be upon franchises, privileges or property, as the general assembly may deem best.” This was also held in State, ex rel., v. Ferris, 53 Ohio St., 314.
It is well settled that the provisions of Section 2, Article XII, are limitations upon the general power granted by Section 1, Article II, so that when it comes to taxing property it is required to be taxed by a uniform rule at its true value in money. But upon the power to tax privileges and franchises there is no express limitation in the constitution. However, in Southern Gum Co. v. Laylin, supra, it was held that in the absence of an express limitation on the power of the general assembly to tax *137 privileges and franchises such power is impliedly limited by those provisions of the constitution which provide that private property shall ever be held inviolate but subservient to the public welfare, that government is instituted for the equal protection and benefit of the people, and that the constitution is established to promote the common welfare; that by reason of these constitutional safeguards a tax on privileges and franchises cannot exceed the reasonable value of the privilege or franchise originally conferred or its continued annual value thereafter. The determination of such values rests largely in the general assembly, but finally in the courts. So that it may be said to be the settled law of this state that under our constitution when property is taxed it must be taxed at its true value in money, by a uniform rule, and when a privilege is taxed it is required that it should be taxed at its reasonable value. It would be wholly impracticable, if not impossible, to prescribe any general rule for the valuation of a franchise or a privilege. Therefore, the reasonable value in each set of circumstances should be fixed.
Moreover, by the provisions of Section 10, Article XII of the Constitution, adopted in 1912, it is provided that laws may be passed providing for excise and franchise taxes. An excise tax has been defined to be a tax imposed on the performance of an act, or engaging in an occupation, or on the enjoyment of a privilege, and it is said in 26 Ruling Case Law, 34, that the word has come to have a broader meaning and includes every form of taxation not a burden laid directly on persons or *138 property. Such a tax was upheld in State, ex rel. Zielonka, v. Carrel, 99 Ohio St., 220. Therefore, as this tax is a revenue tax laid on the specific privilege of operating motor vehicles on the highways of the state, we are confronted with the question whether the taxes imposed by the law in question exceed the value of the privilege taxed. As already pointed out the entire proceeds of the tax, with the exception of the cost of administration, are to be applied to the maintenance and repair of the public roads and highways in the proportions specifically provided by the act. Having been imposed for the distinct object stated in the law, Section 5, Article XII of the Constitution, requires that it shall be applied only to that object. Before the court will hold a law unconstitutional on the ground that its provisions are unreasonable and excessive, and in violation of the safeguards provided by the constitution, it must be made to clearly appear that the enforcement of the statute will result in such violation. Every intendment must be made in favor of the validity of the law, if it appears that the means adopted are suitable to the end in view, impartial in operation, not unduly oppressive upon individuals, and have a real and substantial relation to their purpose.
Now, how is it as to this statute and its purpose? It is within the common knowledge, and the court will take judicial notice of the entirely new use to which the roads of the country have been put within a comparatively few years, as well as of the enormous number of motor vehicles and the vast traffic conducted by means of them upon our highways. *139 No argument is needed to show the great strain to which a road is subjected by machines capable of high power and of carrying traffic of great weight. More and more it becomes one of the important instrumentalities in the conduct of the commerce and trade of the country. Moreover, by common consent there has been a general tendency to the construction of roads of a quality and character vastly superior to those which were constructed prior to the coming of the automobile. The road demanded can be constructed only at a vastly increased expense. This is so because the improved roadway contributes to the enjoyment and comfort of those who pass over it, and to the facility of the passage, and lessens the wear and tear of the motor vehicles.
In Hendrick v. Maryland, 235 U. S., 610, it is said at page 622: “The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads the construction and maintenance of which are exceedingly expensive ; and in recent years insistent demands have been made upon the. States for better facilities, especially by the ever-increasing number of those who own such vehicles. * * * A further evident purpose was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential and whose operations over them are peculiarly injurious.” And at page 623: “In view of the many decisions of this court there can be no serious doubt *140 that where a State at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may-exact compensation therefor.”
In Kane v. New Jersey, 242 U. S., 160, a statute of New Jersey similar to the one in question here was sustained. The aggregate receipts of the law for the year exceeded the amount required to defray the expenses, so that a large sum became available for maintenance of the improved roads of the state. It was contended that the statute was void as in violation of the 14th Amendment. It is said at page 167: “The power of a State to regulate .the use of motor vehicles on its highways has been recently considered by this court and broadly sustained. It extends to non-residents as well as to residents. It includes the right to exact reasonable compensation for special facilities afforded as well as reasonable provisions to ensure safety.”
As to the contention that the tax collected would exceed the cost of maintaining the department it is said: “But the Maryland statute, like that of New Jersey, contemplated that there would be such excess and provided that it should be applied to the maintenance of improved roads. And it was expressly recognized that the purpose of the Maryland law ‘was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential and whose operations over them are peculiarly injurious,’ ”
*141 It is insisted that the occupation and use of the public highways are matters of common right which belong to all the pbople equally. And this is true. But the state which confers privilege equally upon all citizens who use the highway for the -particular purposes for which it is constructed, and in the manner permitted and specified, undertakes the work of constructing and maintaining the highway. And it would seem to be obvious that these privileges, general in the sense that they belong to all the people, yet are special in the sense that they are used and exercised by those who in the language of the statute operate and- drive upon the public roads or highways of the state. Manifestly, these special privileges would be regarded-by any disinterested person viewing the subject as being worth as much as it would cost the state to furnish them, including the cost to the government for the protection and identification of vehicles, for police protection, and for control and direction of the heavy and dangerous traffic which has come with the automobile.
It must also be noted that in addition to the moneys raised by the tax in question, which are required to be used for the maintenance and repair of roads, highways and streets, there are provisions in the General Code for the expenditure of public moneys raised by taxation for the same purpose. Such provisions relate to state roads, county roads, and the construction and maintenance of streets in municipalities. The roads and highways upon which these general revenues are spent are likewise used in “common” by all citizens.
*142 If is well known that there is a very large mileage of roads in Ohio, about 84,000 miles, of which about 16,000 are improved other than with gravel or cinders. It is conceded that the cost of a new hard-surfaced road built according to suitable standard is a very large amount. It is also a matter of common knowledge that there are vast and increasing numbers of automobiles passing over them and subjecting them to heavy wear and strain. We are convinced that it cannot be said that the tax is excessive or unreasonable as determined by the rules we have referred to.
As we have already shown, the law in‘question is a tax law. Its purpose is manifestly the production of revenue to be used for the purpose specifically set forth. If the law raised sufficient to pay only the expense of administering it, it would not be a tax at all. It would be in the nature of a license. Being a tax laid on a privilege for a specific purpose to be used for the maintenance and repair of the thing concerning which the privilege is granted, it is a valid tax unless- unreasonable. The use of the entire proceeds in aid of the specific privilege enjoyed by those who pay the tax is an essential feature in determining its reasonableness.
The views we have expressed are supported by authorities in other jurisdictions on material points here involved, and it is shown by them that other states have enacted and upheld similar statutes, which impose substantially the equivalent of the tax laid by the Ohio law. Smith v. Commonwealth, 175 Ky., 286; State v. Johnston, 79 N. J. L. (50 *143 Vroom), 49; Kane v. State, 79 N. J. L. (52 Vroom), 594, affirmed Kane v. New Jersey, 242 U. S., 160, and Hendrick v. Maryland, 235 U. S., 610.
Complaint is also made as to the classification contained in the statute. Tractors are exempt, but the statute taxes the use of trailers except such as are designed with animal power and for agricultural purposes. The authorities agree that a statute is general and uniform if it operates equally upon every person and locality within the circumstances covered by the act, and when a classification has a reasonable basis it is not invalid merely because not made with exactness, or because in practice it may result in some inequality. Lindsley v. Natural Carbonic Gas Co., 220 U. S., 61, and Steele, Hopkins & Meredith Co. v. Miller, 92 Ohio St., 115, 127.
In this case the thing that the tractor hauls is taxed. If the duty had been ours of making the classification originally we might have made a different provision. We think the legislature might well have included a strong provision regulating the use of cleats on the wheels of tractors. But we are not able to say that it is unreasonable, or that the general assembly in making the classification violated the requirement of uniformity.
For these reasons the j'udgments below will be affirmed.

Judgments affirmed.

Nichols, C. J., Jones, Matthias, Wanamaker, Robinson and Merrill, JJ., concur.