## Wiest v. Heffernan

*Robert H. Henderson* and *J. N. Keller*, for plaintiff.

*J. H. Neely*, for defendant.

BARNETT, P. J., September 19, 1931.—The plaintiff, a citizen of Pennsylvania, on December 1, 1929, was injured in a collision, occurring in this county, between an automobile in which he was traveling and a Buick sedan, owned and driven by the defendant, J. J. Heffernan, then a resident of the State of Delaware. September 30, 1930, he brought this suit against the defendant to recover compensation for personal injuries sustained by him in the accident. October 30, 1930, the sheriff made a sworn return of service of the summons and plaintiff's statement of claim in the following form:

"J. H. Clark, High Sheriff of Juniata County, Pennsylvania, returns under oath that he served the summons and Plaintiff's Statement in the above entitled suit in accordance with the requirements of the Act of Assembly of the Commonwealth of Pennsylvania, approved May 14th, 1929, P. L. 1721, in such cases made and provided, by serving a true and attested copy of the summons and Plaintiff's Statement upon Hon. Charles Johnson, Secretary of Revenue of the Commonwealth of Pennsylvania, by handing to him personally at his office in the City of Harrisburg, Pa., a true and attested copy of said summons and Plaintiff's Statement, on October 1st, 1930; and also by mailing to J. J.

Heffernan, the Defendant, by registered mail, postage prepaid, addressed to him at No. 5158 Du Pont Building, Wilmington, Delaware, his last known address, a like true and attested copy of said summons and Plaintiff's Statement, having endorsed thereon the service upon said Secretary of Revenue, and received in return a return receipt therefor, dated October 16th, 1930, signed on behalf of said Defendant by his duly authorized agent, which return receipt is attached hereto and made a part hereof."

The return receipt attached to the sheriff's return was signed in ink, apparently by the same hand, on the line over the words "Signature or name of Addressee," J. J. Hefferman, and over the words "Signature of addressee's agent," C. White.

On November 1, 1930, a petition, signed and sworn to on October 31st by J. Howard Neely, Esq., as attorney de bene esse for the defendant, was presented, stating that the defendant lived, not in Wilmington, Del., but in a state a thousand miles distant therefrom, that he desired to present a petition to strike off the writ of summons, the plaintiff's statement and the sheriff's return of service thereof, and praying for the allowance of thirty days from date to enable him to prepare such petition. The requested time was granted, and on December 1, 1930, a petition, sworn to by the defendant, was filed, praying for the issuance of a rule upon the plaintiff to show cause why all the proceedings in the case should not be declared void for want of jurisdiction and why the returns of service of both the writ of summons and the statement of claim should not be set aside. The plaintiff made answer to the rule January 27, 1931. In pursuance of rules, depositions of witnesses were taken on behalf of the plaintiff at Mifflintown May 25, 1931, and for the defendant at Wilmington, Del., July 6th following. After argument by counsel, the questions to be determined are now before the court upon petition, answer and depositions.

In the defendant's petition numerous reasons are advanced for the contention that the service of the summons and plaintiff's statement must be set aside and the court declared to be without jurisdiction of the cause. These reasons, excluding certain not pressed by counsel at the argument, may be summarized in two:

1. The Act of May 14, 1929, P. L. 1721, providing for service of process issued by a Pennsylvania court upon a nonresident of the Commonwealth, is unconstitutional, being in conflict with section one of the Fourteenth Amendment to the Federal Constitution.

2. Service of the writ and statement was not made in conformity with the provisions of the Act of 1929 because:

(a) They were not mailed to the defendant's "last known address."

(b) The registered mail return receipt was not signed by the defendant nor by an authorized agent of the defendant.

(c) The summons failed to set forth the address of the defendant or to provide any information to enable the sheriff to ascertain his whereabouts.

This court's jurisdiction of the cause of action is undoubted. Nothing in the defendant's petition, except its prayer, tends to call it in question. We are concerned only with the legal effectiveness of the process by which it is attempted to secure jurisdiction over the defendant. That question depends, first, upon the constitutionality of the act authorizing the service of the process, and, second, upon whether there has been a sufficient compliance with the provisions of the act.

Although the petition alleges the Act of 1929 to be repugnant to the due process of law and equal protection clauses of the Fourteenth Amendment,

214

yet the learned counsel representing the defendant, in written brief and oral argument, concedes that it is not. We see no reason to doubt that the act is constitutional. In a recent well-considered opinion, Miller v. Wormald, 16 D. & C. 465, Judge Cummins has so held it. The question seems not yet to have been before our appellate courts, but the opinion of the Supreme Court upon it is probably forecast in Aversa v. Aubry, 303 Pa. 139, 141. In that case, the defendant, a resident of the State of New York, was sued in Philadelphia on account of personal injuries sustained in an automobile accident in Bucks County, Pa., and service of the summons was made upon him in accordance with the provisions of the Act of 1929. The defendant objected to the jurisdiction of the Philadelphia court, alleging the action should have been brought in Bucks County. Although the question of the constitutionality of the act was not raised, Mr. Justice Walling, delivering the opinion of the Supreme Court, took occasion to remark: "The ease with which motor vehicles can be driven beyond the borders of the state before process can be served is so apparent as might seem to justify the act" (of 1929). The Supreme Court of the United States has more than once held substantially similar statutes of other states not to be obnoxious to the Fourteenth Amendment. In Hess v. Pawloski, 274 U. S. 352, 71 L. Ed. 1091, the Massachusetts statute was held to be constitutional. That statute provided, as does the Act of 1929, in substantially the same words, that a copy of the process be "sent by registered mail . . . to the defendant, and the defendant's return receipt" be "appended to the writ and entered with the declaration." The New Jersey Automobile Law of 1908, providing for service of process upon the secretary of state as the representative of nonresident motorists, required that notice of such service should be given the defendant "by letter directed to him at the post office address stated in his application" (for registration of his automobile). It was held in Kane v. New Jersey, 242 U. S. 160, 61 L. Ed. 222, not to offend against the Fourteenth Amendment. A later statute of the same state (Pamphlet Laws, 1924, page 517), providing that nonresidents of the state, by operating their automobiles within its boundaries, constitute the secretary of state their agent for the acceptance of process in any civil suit by a resident of the state arising from such operation, was decided to be unconstitutional for the sole reason that it required no notice to be mailed to the defendant named in the process, "so as to make it reasonably probable that he will receive actual notice:" Wuchter v. Pizzutti, 276 U. S. 13, 72 L. Ed. 446. This defect having been remedied by an amendment, the act was subsequently sustained by the Federal district court in Cohen v. Plutschak et al., 40 F. (2d) 727. The courts of last resort in a number of the states and the Federal district court have held similar acts to be constitutional. See State ex rel. Cronkhite v. Belden, 193 Wis. 145, 57 A. L. R. 1218; Schilling v. Odlebak, 177 Minn. 90, 224 N. W. 694; Herzoff v. Hommel, 120 Neb. 475, 233 N. W. 458; Moore et ux. v. Payne et al., 35 F. (2d) 232.

Does the service of summons and statement of claim, as reported in the sheriff's return, comply with the requirements of the Act of 1929? The act (section two) reads:

"Such process shall be served, by the officer to whom the same shall be directed, upon the Secretary of Revenue of the Commonwealth of Pennsylvania, by leaving at the office of said secretary, at least fifteen days before the return day of such process, a true and attested copy thereof, and by sending to the defendant, by registered mail, postage prepaid, a like true and attested copy, with an endorsement thereon of the service upon said secretary of revenue, addressed to such defendant at his last known address. The regis-

tered mail return receipt of such defendant shall be attached to and made a part of the return of service of such process."

The service, according to the sheriff's return, was made in strict and literal compliance with the act, and was made, as the act requires, "at least fifteen days before the return day of such process."

To the defendant's objection to the service, and the reasons advanced to support the objection, a general but complete and final answer is provided by the well-settled rule that where fraud is not alleged, a sheriff's return, full and complete on its face, is conclusive upon the parties and cannot be set aside on extrinsic evidence, but a party injured by a false return will be remitted to his action against the sheriff. This rule was applied in Miller Paper Co. v. Keystone Coal and Coke Co., 267 Pa. 180, reversing the lower court, which had set aside a service returned as made at an address in Philadelphia, "the place of business of said defendant company," upon proof by depositions that the defendant was not engaged in business in Philadelphia; in Industrial Acceptance Corp. v. Sickler, 97 Pa. Superior Ct. 152, where the return reported service on the defendant "at his dwelling house" "by handing a true and attested copy thereof to . . . an adult member of the family" of the defendant, and depositions were offered to prove that the defendant had no residence within the jurisdiction of the court; in Rittenberg v. Stein & Specht, 97 Pa. Superior Ct. 554, where the return stated the writ had been served on the defendant Stein at an address in Philadelphia, "the place of business of said defendant," who alleged he was not engaged in business at the place where process was served; in Keystone Telephone Co. v. Diggs, 69 Pa. Superior Ct. 299, where it was averred the writ, returned as served on an adult member of defendant's family, had not been delivered by that person to the defendant, but had been mislaid and not discovered until after execution was issued against the defendant, and that the person to whom the paper had been handed was not a member of defendant's family, but a visitor; in Garrett v. Turner, 47 Pa. Superior Ct. 128, where it was proven that the "adult member" of defendant's family, to whom the copy of the writ was handed, was his daughter, who was only nineteen years of age; and in Flaccus Leather Co. v. Heasley, 50 Pa. Superior Ct. 127, where the sheriff returned a personal service, and the defendant deposed that no service whatever of the writ had been made upon him. In Daly v. Iselin, 10 Dist. R. 193, it is said that the rule that a sheriff's return cannot be contradicted applies "only as to matters returned which the officer knows of his own knowledge, such as the time, place, manner of service and person upon whom made; but it does not apply to facts returned, the truth of which he could only know by hearsay, such as that defendant is a nonresident, doing business within the county, and that the person upon whom service is made is his agent." No authority is cited for this qualification of the rule either in the Daly case or in Buckley v. Shuler, 12 D. & C. 298, 300, where it is quoted with approval. The qualification is obviously in conflict with the Supreme and Superior Court decisions last referred to.

If the question were to be considered upon the petition, answer and depositions, without reliance upon the rule just discussed, the answer must be that the service was sufficient. The necessary conclusion from this record, bearing in mind not only what it contains but what it conspicuously omits, is that actual knowledge of the service of the summons and plaintiff's statement upon the secretary of revenue was brought home to the defendant in the precise manner intended and required by the act. That the defendant actually received the notice cannot be doubted. The notice was mailed by the sheriff

prior to October 16, 1930, the date of its receipt at Wilmington. On November 1st following, before the return day, a petition, prepared and sworn to October 31st by defendant's counsel, was presented, requesting time for the preparation of defendant's petition to set aside the return of service. Not only the employment of counsel to prepare this petition, but certain averments made in it, e. g., that defendant's name is Heffernan, not Hefferman, as written on the return receipt card; that C. White, who signed the card, "is not now and never has been the agent of the said J. J. Hefferman or Heffernan;" that "the said J. J. Heffernan does not live in Wilmington, Del., but in another state, and about 1000 miles distant therefrom," create at least a strong suspicion that the defendant received the notice before the petition was presented. This suspicion becomes a moral certainty when it is observed that in the petition of December 1st, sworn to by the defendant, he fails to deny receipt of the notice, and that when testimony of witnesses in his behalf is taken by deposition, he does not offer himself as a witness to deny its receipt. When a party neither by his pleading nor as a witness denies a fact asserted by his adversary which, if untrue, it is obviously to his advantage to deny, he ought not to complain if his failure to deny be taken as admission, as we do here. If we had any hesitancy in coming to this conclusion, it would be cured by the fact that defendant's counsel, having been notified, in advance of the taking of depositions on May 25, 1931, to produce at that time the registered mail addressed by the sheriff to J. J. Heffernan, at No. 5158 Du Pont Building, Wilmington, Del., failed to produce it, refused to be sworn as a witness, and when asked whether he had the requested papers in his possession, declined to answer. With the sufficiency of the technical reasons given for such refusal we are not now concerned. The mail referred to was the envelope and contents, addressed by the sheriff as above stated, and bearing registry No. 256. When depositions were taken at Wilmington July 6, 1931, a similar envelope, registry No. 257, was offered in evidence by defendant's counsel, Mr. Hopkins. That envelope contained the summons and plaintiff's statement in the case of S. Earl Dubbel against this same defendant, begun at the same time as this action, for injuries sustained by Dubbel in the same accident. That envelope was offered *unopened*. The envelope and contents related to this action were not offered. Here is found the explanation of this evasive proceeding. Both envelopes, registry Nos. 256 and 257, were received October 16th at the Du Pont Building in Wilmington. The receipt cards were signed by C. White, an employee in the mail room department of the E. I. Du Pont de Nemours Company, whose duty it was to receive mail and distribute it among the officers and employees of the company, of which the defendant was one and for whom White had on prior occasions delivered mail at his desk. The defendant having been transferred about March 1, 1930, to the Du Pont Company's offices at St. Louis, Mo., White placed both envelopes, registry Nos. 256 and 257, in an envelope addressed to the E. I. Du Pont de Nemours Company, at Room 1182, Arcade Building, St. Louis, Mo., marked "Attn: Mr. J. J. Heffernan." This envelope was forwarded by registered mail from Wilmington October 17th and received at St. Louis October 18th. The receipt card is dated October 20th, the 19th being Sunday. What followed is scarcely open to doubt. The defendant received the envelope and opened it. He found in it the two envelopes addressed by the sheriff to him at Wilmington; opened registry No. 256, and communicated with his counsel at Mifflintown respecting this action, with the result that the petition of November 1st was presented; and kept No. 257, unopened, for purposes of legal strategy. His effort to avoid the service is disingenuous throughout, if not worse. His

quibble over the difference between the names Hefferman and Heffernan, fully explained in the testimony by his own witness, White, deserves no further notice than to point to its futility. The very exuberance of his protest that he "does not know whether the said C. White (who signed the return receipt on line for 'Signature of addressee's agent') is or is not the agent of the said J. J. Hefferman;" that he "does not pay the said C. White, nor does he have any control or other power of direction over the said C. White, nor is the said C. White, either generally or specially, an agent of your petitioner, neither is your petitioner acquainted with the said C. White, nor does he know who the said C. White is," emphasizes his lack of candor in failing to state what, if he did not know, he could have ascertained by the slightest inquiry, that White was, like himself, an employee of the Du Pont de Nemours Company, authorized by their common employer to receive, receipt for and deliver to him his mail.

The summons did not give the defendant's address nor contain information to enable the sheriff to ascertain it, but the act does not require that it should. If the sheriff mails the notice to defendant's "last known address," it is immaterial, in the absence of statutory requirement, how he discovers the address.

The return receipt was not signed by the defendant himself nor by any person expressly authorized by him to sign it. But it was signed in the manner intended by the act. When the legislature adopted the registered mail service of the United States Post Office as the means of conveying notice of the service of the writ to the defendant and of providing proof that such notice had been given, being powerless to change the methods of the mail service, it necessarily accepted them as they were. The return receipt card used in that service has one line for the signature or name of the addressee, another below it for the signature of the "addressee's agent." In practice, the receipt is signed in many, perhaps the great majority of, instances, not by the addressee himself but by his "agent." And who is that agent? Not one empowered by letter of attorney or otherwise specially authorized, but a member of his household, the desk or mail clerk in his apartment house, hotel or club, a clerk or office boy in his office or place of business, or, in large establishments, such as that in which the defendant was employed, by one whose sole business is to receive and distribute mail among the numerous officials and employees. When the Act of 1929 provided that "the registered mail return receipt of such defendant shall be attached to and made a part of the return of service of such process," it must be assumed to have intended a receipt signed in the manner contemplated by the Federal Postal Law, according to the practice with which everybody is familiar; otherwise the sufficiency of the notice would depend, not upon a strict compliance with the provisions of the act, but upon the mere chance that the addressee might happen to sign the receipt in person. In Hess v. Pawloski, supra, Mr. Justice Butler says of the Massachusetts statute: "It is required that [the defendant] shall actually receive and receipt for notice of the service and a copy of the process," but he does not say that the statute but for such rigid requirement would have been unconstitutional; and since in that case the return receipt had been signed by the defendant personally, the present question was not before the Supreme Court and the quoted language may be regarded as used arguendo. It would seem to be an unnecessary weakness in the Massachusetts act, as in our own, that it requires the return card to be attached to the official return of service. A shrewd defendant, having been involved in an automobile accident in another state and anticipating suit, may refuse to sign the receipt for the

official looking envelope offered by the postman and take care that no one shall sign it for him. Without such requirement, the mailing of the notice, postage prepaid, to the defendant's last known address makes it "reasonably probable that he will receive actual notice."

Was the notice mailed to the defendant "at his last known address?" Cases from other states are cited by the defendant holding that the phrase "last known address" means nothing less than his actual address at the time of the mailing. We cannot follow the reasoning which leads to the conclusion that a meaning which the legislature might, and if it had so intended presumably would, have expressed in apt and simple words is to be implied from words which in no ordinary sense can be so understood. The "last known address" of an individual is certainly not the same thing as his actual present address, and nothing in the first section of the Fourteenth Amendment, as construed and applied by the Supreme Court of the United States, requires that it be distorted by interpretation into implying what it clearly does not mean. What the amendment requires is that the prescribed method of service shall be such as to make it "reasonably probable" that a nonresident defendant will receive actual notice of the technical service upon his agent within the state, i. e., in Pennsylvania, the secretary of revenue: Wuchter v. Pizzutti, supra. If more than that were required the nonresident would be placed in a favored class and accorded more than "due process of law" and "equal protection of the laws." No such absolute certainty is provided by the statutes authorizing substituted service upon our own citizens. There is no certainty that the process will be handed by the "adult member" of his family or by his "agent, partner, or the person for the time being in charge" of his place of business, to the defendant. If it is not, whether with or without the defendant's connivance, nevertheless the service is good. The "last known address" may or may not be the actual present address of the defendant. The use of the phrase indicated that the legislature intended to rely upon another familiar feature of the postal service. Practically everyone who changes his place of residence makes some provision for the forwarding of mail to his new address, and again we have reasonable probability that he will receive mail sent to his last known address. In this case, the defendant himself at the time of the accident, December 1, 1929, stated that he was a resident of Wilmington. Letters received by the plaintiff from him, dated, respectively, December 3 and December 5, 1929, referring to the accident, each gave as his address No. 5158 Du Pont Building, Wilmington, Del. The following October the process was mailed by the sheriff to this address, which, in spite of the fact that defendant had removed to St. Louis about March 1, 1930, we believe to have been his "last known address" under any reasonable interpretation of the phrase. The address was obtained in the manner suggested by Mr. Chief Justice Taft in Wuchter v. Pizzutti, supra, in the course of communications between the parties respecting the accident. If the lapse of ten and one-half months between the time these letters were received and the date the process was mailed, about the middle of October following, was sufficient to forbid the plaintiff's reliance upon this "last known address," then a much less time would have the same effect, and we are driven to the "actual present address" interpretation, which defeats the very purpose of the statute. Under the New Jersey Automobile Law of 1908, which the United States Supreme Court held, in Kane v. New Jersey, supra, not to conflict with the Fourteenth Amendment, a much longer time than ten and one-half months might elapse between the filing of the motorist's application for registration, in which he was required to state his post office address, and the beginning of an action and

the mailing of notice of service of process to that address, as required by the act. In cases not within the tenor of the Fourteenth Amendment "last known address," or a similar phrase, has been interpreted as we understand our legislature to have intended it to be understood. In Campbell *v.* Moran, 161 Cal. 325, 119 Pac. 89, it was held that under an act requiring an assessor to state in the assessment of property the name and post office address, if known, of the person to whom the property is assessed, the address shown on the last assessment constitutes the last known post office address so far as the tax records are concerned, and, in the absence of other information, the tax collector must take notice of the address as shown and mail the notice of resale to such address. In Adams *v.* Rowe, 11 Me. 89, 25 Am. Dec. 266, it was decided that service of a writ of sci. fa., in a suit commenced in Massachusetts, by the officer leaving a copy thereof at the "last and usual place of abode" of a trustee in that state, according to the laws of that state, was sufficient, though prior to such service he had removed to a neighboring state. Tilden *v.* Johnson, 60 Mass. (6 Cush.) 354, 359, decides that one who owned real estate and carried on business in Massachusetts until the year 1841, when he removed to another state, where he continued to reside, will in 1843 be deemed to have a "last and usual place of abode" in Massachusetts.

And now, September 19, 1931, the petition to set aside the service of the summons and plaintiff's statement is dismissed. The defendant excepts, and at his instance a bill of exceptions is sealed.