**SAGE et al. v. BALDWIN et al.**

District Court, N. D. Texas, Dallas Division.
Feb. 5, 1932.

Dailey & Keller and Wm. M. Hill, all of Dallas, Tex., and Leon Jaworski, of Houston, Tex., for complainants.

James V. Allred, Atty. Gen., T. S. Christopher and Elbert Hooper, Asst. Attys. Gen., for respondents.

Before HUTCHESON, Circuit Judge, and GRUBB and ATWELL, District Judges.

ATWELL, District Judge.

Complainants allege: That they are contract carriers of freight by motor from various states into and through the state of Texas. That they are engaged exclusively in such interstate commerce as contract carriers. That they have invested large sums of money in such business, and have large contracts. That they also have contracts to carry freight from Texas to other states. That while they were engaged in this business they were threatened with arrest by the defendant state authorities and officers and finally arrested and placed in jail because they would not comply with all of the provisions of House Bill No. 335 of the Texas Legislature, which was passed for the "further regulation of highway motor carriers," on June 5, 1931, and became effective on August 22, 1931 (Acts 42d Leg. [1931] c. 277 [Vernon's Ann. Civ. St. Tex. art. 911b, § 1 et seq.]). That the act is unconstitutional and in conflict with the commerce clause and the Fourteenth Amendment of the National Constitution.

On November 28, 1931, this court granted a temporary restraining order, and the application for a temporary injunction was heard on December 7th by a statutory three-judge court. On January 8th the cause came on for final hearing for a permanent injunction.

Whatever may be said of the early contentions of the respondents, they conceded at the final hearing that there were certain provisions of the act which were invalid as to interstate carriers, but they pressed the contention that the act is separable.

The act under scrutiny is one of three that were passed by the Forty-Second Legislature. House Bill No. 628, styled, "regulating operation of cotton trucks on state highways" (Acts 42 Leg. Tex. [1931] c. 121 [Vernon's Ann. P. C., Tex. art. 827c]), was held invalid, in part, in the case of J. H. McLeaish & Co.

et al. v. T. Binford et al. (D. C.) 52 F.(2d) 151, affirmed United States Supreme Court, January 25, 1932, 52 S. Ct. 207, 76 L. Ed. —; Sproles v. Binford (D. C.) 52 F.(2d) 730.

House bill No. 336, "regulation of vehicles on highways (Acts 42 Leg. [1931] Tex. c. 282 [Vernon's Ann. P. C. Tex. art. 827a, § 1 et seq.])," is also under review, and has been partially sustained and partially criticised. So, we must look at the whole effort as a movement by the state after much consideration.

It is rather difficult to understand the entire scheme of the particular law we are studying without setting out all of its provisions. It has twenty-three sections, and vests the power of enforcement in the Railroad Commission, Highway Commission, and all local officers of the state. It creates a number of new misdemeanors which carry penalties. Its effectiveness revolves around the denying of the use of the highways of the state to any contract or common carrier that does not have a permit issued by the Railroad Commission. In order to get the permit, the carrier must make an application in writing, giving full information as to the financial condition and physical properties, the nature of the transportation in which the applicant wishes to engage, stating substantially the territory to be covered by the operation, including the condition and character of the roads over which transportation is to be performed. It must also describe each vehicle intended to be used, including the weight, size, and carrying capacity. Upon such application the commission shall have a hearing and a permit shall not be granted if the proposed operation will impair the efficient public service of any authorized common carrier then adequately serving the same territory. The commission is also required to prescribe rules covering the operation of contract carriers in competition with common carriers, and must prescribe rates to be charged. The power is also given to fix the hours of service of the operators. Certificates of public convenience and necessity are provided for, which include a finding by the commission of the service rendered by present carriers; the proposed schedule of service and of rates to be charged between the service points, and the applicant shall point out the inadequacy of existing transportation facilities, and show the necessity for additional facilities. A bond must be given to secure loss or damage from personal injury, or loss of property, such insurance to apply also to the cargo, and protection must be afforded employees under the workmen's compensation insurance act of Texas (Vernon's Ann. Civ. St. art. 8306 et seq.). Inquiries may be made into the nature of the equipment and the method of loading the cargo. The accounts kept by the carriers are under the supervision of the commission, while rebates or favoritism in rates is prohibited.

This rough statement of the lengthy provisions of the law immediately assures us that there is no distinction made between intra and inter state carriers. Since it is presumed that the Legislature did not intend to invade the field in which the federal government has exclusive jurisdiction, St. Louis Southwestern R. Co. v. State of Arkansas, 235 U. S. 350, 35 S. Ct. 99, 59 L. Ed. 265; Saint Louis, etc., R. Co. v. Seale, 229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156, we must take a quick, though summary, glance at each jurisdiction.

Highways belong to the public and are primarily for its use in the ordinary way, and there may be valid prohibition of a use for gain in an extraordinary way. There may be regulation of an activity which is not purely a matter of right, but which is carried on by sufferance or permission. The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is harmful to the ways themselves. A state which furnishes special facilities for those engaged in commerce may exact compensation therefor, and carriers who make such highways their place of business may be charged an extra tax for such use, and insurance may be exacted. The exclusion of unnecessary vehicles aids safety and economy and the requiring of a permit is reasonable.

But a state may not impose any condition which requires the relinquishment of a right guaranteed by the National Constitution. Interstate commerce, in all of its forms, must be free from any substantial burden sought to be exercised by any state. Bekins Van Lines v. Riley, 280 U. S. 80, 50 S. Ct. 64, 74 L. Ed. 178; Packard v. Bantom, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596; Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Frost & Frost Trucking Co. v. Railroad Comm., 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; Interstate Busses Corporation v. Blodgett, 276 U. S. 245, 48 S. Ct. 230, 72 L. Ed. 551; Buck v. Kuykendall, 267 U. S. 314, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Smith v.

Cahoon, 283 U. S. 554, 51 S. Ct. 582, 75 L. Ed. 1264; Michigan Public Utilities Comm. v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Hodge Drive-It-Yourself Co. v. City of Cincinnati, 52 S. Ct. 144, 76 L. Ed. ——, January 4, 1932; Clark v. Poor, 274 U. S. 557, 47 S. Ct. 702, 71 L. Ed. 1199; Hess v. Pawloski, 274 U. S. 356, 47 S. Ct. 632, 71 L. Ed. 1091; Morris v. Duby, 274 U. S. 143, 47 S. Ct. 548, 71 L. Ed. 966; Bush & Sons Co. v. Maloy, 267 U. S. 317, 45 S. Ct. 326, 327, 69 L. Ed. 627; Southern Railway Co. v. King, 217 U. S. 524, 30 S. Ct. 594, 54 L. Ed. 868; Johnson Transfer & Freight Lines v. Perry (D. C.) 47 F.(2d) 900; Hi-Ball Transit Co. v. Railroad Comm. (D. C.) 27 F.(2d) 425; State v. Humble Pipe Line Co., 112 Tex. 375, 247 S. W. 1082; Atlantic-Pacific Stages v. Stahl (D. C.) 36 F.(2d) 260; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222.

The contention of the respondents that the act is separable is based upon section 23, which provides that, "if any section, subsection, clause, sentence or phrase of this act is for any reason held to be unconstitutional and invalid, such decision shall not affect the validity of the remaining portions of the act. The Legislature hereby declares that it would have passed this act and each section, subsection, sentence, clause or phrase thereof irrespective of the fact that any one or more of the sections, subsections, sentences, clause or phrases are declared unconstitutional." There is also a divisibility clause in the latter part of subdivision d of section 6, (Vernon's Ann. Civ. St. Tex. art. 911b, § 6, subd. d), which exempts from the operations of the act carriers engaged in transporting for hire live stock, mohair, wool, milk, live stock feedstuffs, household goods, oil field equipment, timber when in its natural state, farm machinery, and grain.

■ The saving provisions may be conceded to be insufficient. The law may be acknowledged to be so compactly and so comprehensively worded as to make its very existence and efficacy depend upon its complete sway over both inter and intra state motors. Within the doctrine that we are now discussing it may be legally impossible to separate the provisions which guarantee safety and which are therefore appropriate police regulations from those that are clearly unwarranted restrictions upon interstate commerce, so that the first would stand alone. It may be that under such authorities as Williams v. Standard Oil Co., 278 U. S. 241, 49 S. Ct. 115, 73 L. Ed. 287, 60 A. L. R. 596; Hill v. Wallace, 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed.

822; Dorchy v. Kansas, 264 U. S. 286, 44 S. Ct. 323, 68 L. Ed. 686; Dunn v. Fort Bend County (D. C.) 17 F.(2d) 329, 330; Keller v. Potomac Electric Power Co., 261 U. S. 444, 43 S. Ct. 445, 67 L. Ed. 731; Frost v. Corporation Comm. of Oklahoma, 278 U. S. 516, 49 S. Ct. 235, 73 L. Ed. 483; Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; Davis v. Wallace, 257 U. S. 478, 42 S. Ct. 164, 66 L. Ed. 325; and State v. Dombaugh, 20 Ohio St. 167—in spite of the announcement of divisibility, an effort to divide would result in a cripple. In the absence of a legislative declaration the legal presumption is that an act is to be effective in its entirety, since there is no right of mutilation and a court will not resort to elimination, but this presumption is overcome by a declaration of separability. When there is such a declaration, the act is presumed to be divisible; this presumption must be overcome by considerations which make evident the inseparability of its provisions, or the clear probability that the invalid part being eliminated the Legislature would not have been satisfied with what remains, said Justice Sutherland, in Williams v. Standard Oil. The concession of executive officers that certain provisions are invalid will not be accepted in the determination of the problem by a court. Montana Nat. Bank v. Yellowstone County, 276 U. S. 499, 48 S. Ct. 331, 72 L. Ed. 673.

■ Still the case must be ruled by reasoning such as appears in State v. Martin, 210 Iowa, 207, 230 N. W. 540, 543. The Supreme Court of Iowa had under consideration a general statute directed at automobile carriers. The provision therein for bonds and for a certificate of convenience and necessity was manifestly invalid as to interstate commerce carriers, but that court said: "The statute may not be held to be invalid as a whole, nor its application to interstate carriers wholly denied because some of its provisions which in broad terms include all carriers, intrastate and interstate without discrimination, may as to interstate carriers be inoperative under the commerce clause of the Federal Constitution. The commerce clause may operate to limit the applicability of some of the broad (and otherwise unrestricted) provisions of the statute. If so, the limitation should be observed and the general language of the statute restrained accordingly. The commerce clause operates merely as an impediment to the application and enforcement of the statute to the extent that such application and enforcement would be in contravention thereof, but the statute is not void merely be-

cause its terms, if given unrestricted interpretation, might come in conflict with the interstate commerce clause of the federal constitution." In re Rahrer, 140 U. S. 545, 11 S. Ct. 865, 35 L. Ed. 572.

In an injunction proceeding where certain portions of the attacked law are good, and certain portions are inapplicable to the complainant, it is a practical thing for a court to construe in such way as to preserve the bigness of the state's authority and the nation's unquestioned field.

Where provisions constitute burdens on interstate commerce, it must be presumed that the Legislature intended that they should not apply to such.

The testimony supports the finding of the Legislature that highway traffic has increased tremendously; that the hazards and dangers of such highways for the public are almost appalling. The wording of the law indicates that the Legislature had in mind the relief of the situation. It is quite evident also that the Legislature intended to supervise the hauling of freight in an effort to relieve the want of common carriers other than motor.

Preserving, therefore, the rights of the state and the rights of the nation, the respondents will be enjoined from interfering with the operations of the complainants, or from arresting them for alleged violations of this law, so far as any rates may be concerned, or so far as any bond securing any shipper may be concerned, or so far as any certificate of public convenience or necessity is concerned, or so far as the impairment of any other service, either contract or common carrier is concerned, or so far as the making of any reports or the keeping of classification of accounts, or in any wise seeking to effect the relationship of the complainant, or any of them, to shippers, either within or without the state; the order making it clear that nothing in this restraint shall in any manner limit the power of respondents in the exercise of the police power of the state relating to traffic safety; highway protection; competent drivers, who shall be licensed; the hours of drivers; the giving of bond to secure the public against loss from personal injuries; the inspection and approval or disapproval of the equipment; the display of the license tag; the equipment itself; classification of the highways of the state as to congestion; and their character and ability to withstand use—all as provided for as traffic safety provisions in the act.