## Staunton.

## L. S. RUDOLPH V. FARMERS' SUPPLY CO., INC., ET ALS.

September 22, 1921.

Absent, Burks, J.

1. OFFICERS AND AGENTS OF PRIVATE CORPORATIONS—*Notice to Officer Notice to Corporation—Scope of Officer's Authority.*—The rule that notice to an officer or agent is notice to the corporation applies as a general rule only where the matter with reference to which notice is given or acquired is within the scope of the officer's or agent's authority, and has some direct connection with his agency, and the notice or knowledge comes to or is possessed by him in his official or representative capacity, and where the officer or agent in the line of his duty ought and could reasonably be expected to act upon or communicate the knowledge to the corporation; and hence the corporation is not affected with knowledge which the officer, or agent, acquires while not acting within his authority, or which relates to matters not within the scope of his authority, or which is acquired by a person who is not an officer or agent of the corporation.

2. OFFICERS AND AGENTS OF PRIVATE CORPORATIONS—*Notice to Officer Notice to Corporation—Scope of Officer's Authority—Case at Bar.*—In the instant case a salesman of a corporation and its acting secretary, in an apparently casual conversation with a dealer in automobiles after the dealer had ceased to be an agent for the corporation, was apprised that the dealer had for sale and as a part of his stock in trade a second-hand car sold by the corporation to a third party under a contract of conditional sale. It was not established that this knowledge of the secretary of the corporation was secured by him while acting within the sphere of his duty and attending to the business of his company. Nor did it appear that it was the officer's duty to report the information thus secured to the general officers or agents of his company.

*Held:* That the knowledge of the acting secretary was not the knowledge of the corporation.

20

3. AUTOMOBILES—*Conditional Sales—Sale by Vendee to Dealer— Subsequent Sale by Dealer—Case at Bar.*—Plaintiff sold an automobile on time payments. The contract of sale reserved title in plaintiff and was duly docketed. Thereafter, without the knowledge of plaintiff, the automobile was sold by purchaser to a dealer in second-hand automobiles, who placed it in his stock and afterwards sold it to defendant, a *bona fide* purchaser for value.

*Held:* That as plaintiff was not aware of the subsequent sale of the automobile to the dealer, and did not stand by and permit the dealer to place the car in his salesroom, and offer the same for sale to the public, there was no estoppel by conduct, and he could assert his lien against defendant.

4. CONDITIONAL SALES—*Recovery of Subject of Sale by Vendor— Assignment of Unpaid Notes to Bona Fide Purchaser From Vendee.*—Where the vendor, under a conditional sale of an automobile in order to enforce his lien, seeks and obtains possession of the car from a *bona fide* purchaser from his vendee, if the balance due to the original vendor upon the car should be paid by the *bona fide* purchaser, or the balance be recovered by the original vendor by means of sale of the automobile, the original vendor should assign the unpaid notes constituting part of the original purchase price of the automobile, together with a lien upon the automobile, to the *bona fide* purchaser, without recourse as to the original vendor.

Appeal from a decree of the Law and Chancery Court of the city of Roanoke. Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Willis, Adams & Hunter,* for the appellant.

*Hall, Wingfield & Apperson,* for the appellees.

SAUNDERS, J., delivered the opinion of the court.

On December 17, 1919, the Farmers' Supply Company, a corporation doing business in the city of Roanoke, sold to L. W., W. M., and J. O. Garman, citizens of Roanoke county, a Maxwell touring car, for the sum of $1,125.00.

By a written agreement between the parties, three hundred dollars of the purchase money was to be paid in cash, and the balance to be paid in eleven installments of $75.00 each, all of these deferred installments to be evidenced by notes of the buyers. It was further agreed that the Farmer's Supply Company was to retain title to the said car until the whole of the purchase price was paid. A memorandum of this contract was duly docketed in the clerk's office of the Circuit Court of Roanoke county on December 19, 1919. Thereafter, this automobile was sold by the Garmans to one Walter L. Davis, a resident and dealer in second-hand automobiles in the city of Roanoke. L. S. Rudolph, the appellant in this proceeding, bought said automobile from Davis without knowledge of any reservation of title thereon. Later, Davis failed in business, and absconded. Thereupon the Farmers' Supply Company filed its bill in chancery against the Garmans, and L. S. Rudolph, alleging among other things that a balance was due from the said Garmans on the purchase price of said automobile, and that it held a lien on same which it was entitled to enforce. To this end, as well as in other respects, the aid of the court was asked.

Rudolph answered this bill, setting up that he was a purchaser for value of said automobile without knowledge, or notice of the contract of sale relied upon by the plaintiff; that Davis was a dealer in automobiles in the city of Roanoke, and the automobile in question was a part of a shifting stock of merchandise; that complainant was aware "during the time that Davis had possession of the automobile, and at the time of its purchase by respondent, that said Davis was conducting a business of buying and selling automobiles," and that with this knowledge, "complainant suffered and permitted Davis to retain said automobile as a part of a shifting stock of merchandise, and thereby lost its right to subject said automobile to sale under its

contract, as against a *bona fide* purchaser for value, and without notice, or knowledge of said contract."

The answer asked that the same be treated as a cross bill, and that a decree be entered relieving respondent of any liability under and by virtue of complainant's contract; and in the event the lien was held to be valid, asking that the Garmans be "ordered to reimburse said respondent in whatever sum he might be compelled to pay complainant to satisfy said lien."

No process appears to have been issued against the Garmans to answer the cross bill, and the same was not taken for confessed as to them.

Upon the hearing of the bill, answer, depositions and exhibits, the court established the complainant's lien, and directed the automobile to be sold in satisfaction of same, but refused to give a decree of reimbursement in favor of Rudolph against the Garmans, as prayed in said Rudolph's cross bill.

An appeal from this decree was allowed by one of the judges of this court, thereby bringing the whole controversy before us for consideration and review.

The contentions of the appellant are:

I.   That the automobile in the possession of Davis as a dealer, was an article of shifting merchandise, and that as against an innocent purchaser, the lien of the initial vendor was not enforceable.  The case of *Boice* v. *Finance Corporation*, 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654, is relied upon to support this contention.  Further, it is contended that the officers of the supply company not only knew that Davis was conducting a retail automobile sales business and acting as agent for them, but knew that Davis had this particular car in his place of business for sale.

II.   That the court, after establishing complainant's lien, should have given judgment over in favor of Rudolph against the Garmans, or in lieu thereof should have re-

quired that the notes for the unpaid deferred instalments on the car, if paid by Rudolph, should be "assigned to him by the Farmers' Supply Company, without being marked paid."

The evidence relied upon to show that the Farmers' Supply Company (appellee) was aware that the car sold the Garmans, was in the hands of Davis for resale as one of a stock of second-hand cars, is not impressive. W. E. McGuire, Sr., is the president of the Farmers' Supply Company. He was examined for the plaintiff, and stated that Davis sold cars for his company on commission, but did not think he represented them at the time he bought the Garman car. Witness had been told that "Davis had been selling cars at a second-hand automobile place," but "knew nothing about his business." Witness' son, W. E. McGuire, Jr., "was a salesman for the Farmers' Supply Company," and also "secretary-treasurer. He was acting secretary." Further, this witness stated that he did not think that Davis was selling for the supply company up to June 1, 1920.

Davis states that he bought the Garman car some time in 1920, about May 20th, but adds that when he made this purchase, "he was not agent for the Farmers' Supply Company," thereby positively confirming McGuire's impression in this respect. The following extracts from the testimony of this witness relate to the alleged imputed knowledge of the supply company, that the Garman car was in Davis' hands for sale, and constituted a part of his stock in trade.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. State whether or not any officer, or agent, of the Farmers' Supply Company knew that you had this car?

"A. The young Mr. McGuire knew that I had this car, for he had a talk with me. He is acting secretary. I told him that I had the car there.

"Q. Did you tell him that you had the car for the purpose of disposing of it?

"A. Yes. I could not say that we were talking about having the car there. I would not say that.

"Q. He knew that you had bought it?

"A. Yes.

"Q. Did young Mr. McGuire see this car when he was there?

"A. I would not be sure whether he did or not.

*    *    *    *    *    *    *    *    *    *

"Q. Were you selling the car for the Farmers' Supply Company to the Garmans?

"A. Yes.

"Q. Were you agent at that time for the supply company?

"A. Yes.

"Q. At the same time you were running this business?

"A. No.

"Q. But I understood that you were acting as agent for the supply company.

"A. Not when I bought this car from Garman."

From the foregoing testimony it will be perceived that Davis bought the Garman car after he ceased to represent the supply company.

This testimony also shows that it was in an apparently casual conversation with young McGuire some time in 1920, and not in the course of business (for he did not represent the company at the time), that he told the latter that he had this car for sale.

[1, 2] Would this conversation be sufficient to impute to the supply company knowledge that the car in question was in the hands of Davis for sale, and a part of his stock? The answer to this query must be in the negative.

"While a corporation knows a fact only as its officers and agents know it, it does not know all that its agents know, but only what comes to them while acting for the corporation within the scope of their agency, when it is

their duty to report their knowledge to the general officers, or agents of the company, and it may be presumed. that they have told their principal what they know." *Corrigan* v. *Bobbs-Merrill Co.,* 228 N. Y. 68-69, 126 N. E. 260, 10 A. L. R. 662.

"The prevailing rule upon this subject in the Federal courts is that notice to an officer of a corporation is not such notice to the corporation as. to affect its rights, unless such notice, or knowledge of the officer, is in regard to a matter coming within the sphere of his duty, while attending to the business of the company, and acquired while acting in regard to the same." *McDermott* v. *Hayes,* 197 Fed. 129-135, 116 C. C. A. 553, 559.

"The rule that notice to an officer, or agent, is notice to the corporation, applies as a general rule only where the matter with reference to which notice is given, or acquired, is within the scope of the officer's, or agent's authority, and has some direct connection with his agency, and the notice, or knowledge comes to, or is possessed by him in his official, or representative capacity, and where the officer, or agent, in the line of his duty ought, and could reasonably be expected, to act upon, or communicate the knowledge to the corporation; and hence the corporation is not affected with knowledge which the officer, or agent, acquires while not acting within his authority, or which relates to matters not within the scope of his authority, or which is acquired by a person who is not an officer, or agent, of the corporation." 14-A Corpus Juris, p. 487.

In the case of *Taylor* v. *Sutherland-Meade Tobacco Co.,* 107 Va. 787, 790, 60 S. E. 132, it appears that an affidavit in attachment which the Code required to be made by the plaintiff, his agent, or attorneys, was signed by the secretary and treasurer of the corporation.

The court held that "this affidavit did not show on its face that it was made by an agent of the corporation, the

court not taking judicial knowledge of the fact that such officer was, *virtute officii*, the agent of the corporation."

In the instant case it appears that a salesman of the supply company, and its acting secretary, in a conversation with Davis after the latter had ceased to be an agent for the supply company, was apprised that Davis had the Garman car for sale. It is not established, nor sought to be established that this knowledge was secured by McGuire while acting within the sphere of his duty, and attending to the business of his company. Nor does it in any wise appear that it was McGuire's duty to report the information thus secured to the general officers, or agents of his company.

Hence, under the circumstances revealed, McGuire's knowledge was not the knowledge of the supply company, and if this casual communication of information by Davis is to be regarded as notice to McGuire, it was not notice to the Farmers' Supply Company.

[3-4] The elimination of this feature of the instant case leaves remaining for determination the inquiry whether the holder of a lien such as was reserved in this case, valid in all respects in its inception and recordation, shall be deprived of the benefit of same by the supervening act of his vendee who sells the same to a dealer without the knowledge of his vendor, thereby allowing the mortgage chattel to become a part of a shifting stock, and in the result to be sold to a *bona fide* purchaser for value, and without knowledge, or notice of the contract.

The facts upon which the decision rests in the case of *Boice* v. *Finance and Guaranty Company* are widely different from the facts in the case in judgment.

Gordon, a licensed dealer in automobiles, with a salesroom and storeroom on Broad street, in the city of Richmond, purchased certain automobiles from the National Company. He borrowed the money with which he paid

for these automobiles from a guaranty company in Baltimore, Md. To secure the notes given for this borrowed money, he executed a chattel mortgage which was duly recorded in the city of Richmond. Thereafter, the automobiles in question passed into, and became a part of his stock in trade in his salesroom. C. Boice, the plaintiff in error, purchased and paid for one of these cars, on which a balance of purchase money, secured as aforesaid, was still due. Thereupon, the guaranty company brought an action of detinue to recover possession of the automobile. The evidence showed that the guaranty company was aware that Gordon was exposing and offering for sale to the general public the automobiles in his showroom, or salesroom, and that the automobiles upon which the chattel mortgages were given were bought for sale, and placed in said salesroom for that purpose. The question presented was, who had the superior claim to the automobile—Boice, or the guaranty company? Boice was a subsequent purchaser for value from Gordon, without actual notice of the existence of the mortgage. The court held, "that when an owner stands by and permits a seller who is a licensed dealer in such goods to hold himself out to the world as owner, to treat the goods as his own, to place them with other similar goods of his own in a public showroom, and to offer the same indiscriminately with his own to the public, he will be estopped by his conduct from asserting his owner-- ship against a purchaser for value without notice of his title.

The constructive notice furnished by the recorded mortgage, or deed of trust in such cases, is not sufficient. The act of knowingly permitting the goods to be so handled and used by the seller in the ordinary and usual conduct of his business, is just as destructive of the rights of the creditor as if such permission had been expressly granted in the mortgage or deed of trust." *Boice* v. *Finance and Guaranty Co.*, 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654.

It will be noted in this case that the owner loses his lien because his conduct estops him from enforcing it. No such situation is presented in the instant case. The supply company sold a car to the Garmans, not to become part of a shifting stock, on exhibit for sale, but for their personal use. A lien for the deferred balance of purchase money on this car was reserved in a written contract, pursuant to the statute, and a memorandum thereof duly recorded in the clerk's office of the county of the vendee's residence.

The vendor was not aware of the subsequent sale to Davis, and did not "stand by and permit" Davis to place the car in his salesroom, and offer the same for sale to the public. Hence, there is no estoppel by conduct. The sole ground upon which the supply company could be deprived of its lien in the instant case would be upon the theory that after a lien is reserved under section 5189, it is the duty of the vendor to keep track of the chattel, and if it is sold to a dealer, and becomes part of a shifting stock, to take prompt and appropriate steps to preserve his lien, and prevent a sale to an innocent purchaser. There is nothing in section 5189 to indicate that the General Assembly, when it gave the lien which that section affords, intended to place upon the vendor the duty of following the subsequent course of the chattel sold by him, and, failing in this duty, incur the penalty of losing his lien in the event that in the ultimate such chattel without his knowledge became a part of a shifting stock, and was sold to an innocent purchaser. It would be unreasonable to place such an interpretation upon the statute. The controlling principle asserted and established in *Boice* v. *Finance and Guaranty Corp., supra,* is that the company's conduct was as destructive of its right to assert its lien, as if it had expressly included in the mortgage provisions adequate to defeat its purposes. It is not perceived that the Law and Chancery Court of the city of Roanoke erred in upholding the lien in question, and its

action in that respect is sustained.  It is considered, however, that to the extent of the balance due to the supply company upon the car in question, should the appellant pay the same, or said balance be recovered by the said company by means of sale of the automobile under the decree under review, the supply company should and is hereby required to assign the notes of said Garmans, above mentioned, together with the lien upon the automobile, to the said Rudolph, without recourse as to said company.

*Affirmed.*