This is a civil action of claim and delivery instituted by plaintiff against defendant. The plaintiff claims title to one Pontiac automobile by virtue of a chattel mortgage conveying four automobiles to her, executed 4 August, 1926, and recorded 7 August, 1926.
A. W. Lane, trading as The Lane Motor Company, was an automobile dealer in Pontiac and Studebaker automobiles, in Elizabeth City, N.C. and had been in business there about two years. On 14 August, 1926, defendant bought from him a Pontiac automobile. The automobiles, one of which defendant purchased, and on which plaintiff had a chattel mortgage recorded, were kept in a show or display room of defendant, on the corner of Main and Road streets, in Elizabeth City, N.C. which is one of the most public corners in said city. The show or display room had a glass front. Lane kept in the show or display room an average of two to five cars for sale. The cars were kept by Lane to demonstrate and sell to any prospect he might be able to get and to the general public *Page 155 
At the time defendant purchased from A. W. Lane the Pontiac automobile from the show or display window, there was a mortgage on it to plaintiff, made and executed 4 August, 1926, and recorded in the office of the register of deeds for Pasquotank County on 7 August, 1926. The mortgage was given to secure a note of $2,000, for money loaned, dated 4 August, 1926, and due 4 September, 1926. The property in the chattel mortgage was described as follows: "One Studebaker Duplex Phaeton, Serial Number 3141200, Motor Number 20,189 — new. One Studebaker Touring Car — used — Serial Number 3073768 — Motor Number 65,752. One Pontiac Coupe — Serial Number 38838 — Motor Number 39,475 — new. One Pontiac Sedan — Serial Number 38716 — Motor Number 39,325 — new. Also the following Life Insurance Policy on my life, and payable to my estate. Life Policy No. 102,870 — North American Life Insurance Co., for $10,000. All of said property is free and clear of any and all liens and encumbrances, and title to same fully vested in me."
Lane continued in business in Elizabeth City until 9 October, 1926, when he disappeared, and on 13 October plaintiff notified defendant by letter of her mortgage. Defendant did not go to the register of deeds' office before he purchased the automobile, but afterwards found the mortgage on record with the aid of the register of deeds.
Plaintiff testified in part: "I knew that he was an automobile dealer, and had a show and display room on the corner of Main and Road streets, and that for several years he had been conducting a general dealer's business in Pontiac and Studebaker automobiles at that point. I knew that the cars that were kept in that show room were kept there for the purpose of indiscriminate sale to anybody who wanted to buy. . . . I never saw the automobiles I had the mortgage on. I should judge they were in this show room. I never made any effort to take them from his show room. I cannot say they were there at the expiration of thirty days. I live within one block of the show room, and pass it several times a day when I am in town. I didnot know this Pontiac was one."
The testimony of the attorney who drew the mortgage: "That prior to the execution of the mortgage in question he looked up the records in the courthouse, he examined the title registration of the cars, and that he had seen and examined the cars mentioned in the mortgage and checked up the motor and engine numbers, and that the cars described in the mortgage were in Lane's show room at the time the mortgage was executed." The plaintiff further testified: That the attorney prepared the mortgage, having been employed by Lane for that purpose.
J. C. Spence, the register of deeds, testified: "All chattel mortgages are indexed in the chattel mortgage book in my office and nowhere else. *Page 156 
They are cross-indexed in the front of each chattel mortgage record. Each paper is indexed and cross-indexed in that book. That is the permanent cross-index to chattel mortgages in Pasquotank County. Chattel mortgages have been so recorded in this county ever since I went in there in 1900, and so far as I have noticed all the time before that. Chattel mortgages in each chattel mortgage book are cross-indexed in an index in the front of that book. Each cross-index contains the chattel mortgages which are recorded in that book, and contains an index of them both on the grantee and grantor sides or rather on both the mortgagee and mortgagor sides. During my connection with the office and so far as my knowledge extends there has been no other cross-index record kept of chattel mortgages in Pasquotank County. . . . I don't keep any cross-index to chattel mortgages in a single index book. It has never been kept that way in this county. We do keep a general large index for all land papers. . . . As a matter of fact, a chattel mortgage on a new automobile given in 1926, would have been registered in one of the last three or four chattel mortgage books. Sometimes we run one chattel mortgage book a year, sometimes a little over, maybe sometimes one and a half."
At the close of all the evidence, upon motion of the defendant, the court below rendered judgment as in case of nonsuit against the plaintiff. C. S., 567. Plaintiff excepted, assigned error and appealed to the Supreme Court.
The questions presented: (1) Can automobiles bought for the purpose of sale to the general public, exposed for such sale at the place of business of a licensed dealer, be the subject of a valid chattel mortgage as against a purchaser for value and without actual notice? (2) Is the indexing and cross-indexing of a chattel mortgage in the front of the chattel mortgage book in which it is recorded alone a sufficient compliance with sections 3560 and 3561 of the Consolidated Statutes? Under the facts and circumstances of this case, we think both questions must be answered in the affirmative.
C. S., 3311, is as follows: "No deed of trust or mortgage for real or personal estate shall be valid at law to pass any property as against creditors or purchasers for a valuable consideration from the donor, bargainor or mortgagor, but from the registration of such deed of trust or mortgage in the county where the land lies; or in case of personal estate, where the donor, bargainor or mortgagor resides; or in case the donor, bargainor or mortgagor resides out of the State, then in the county *Page 157 
where the said personal estate or some part of the same, is situated; or in case of choses in action, where the donee, bargainee or mortgagee resides. For the purposes mentioned in this section the principal place of business of a domestic corporation is its residence."
It is said in Door Co. v. Joyner, 182 N.C. at p. 521: "In the construction of our registration laws this Court has very insistently held that no notice, however full and formal, will supply the place of registration. Dye v. Morrison, 181 N.C. 309; Fertilizer Co. v. Lane,173 N.C. 184; Quinnerly v. Quinnerly, 114 N.C. 145. And under such interpretation there is doubt whether this doctrine of title by estoppel would be allowed to prevail against one holding by a prior registry, whether with or without notice. In the Georgia case heretofore cited (Wayv. Arnold), 18 Ga., at p. 193, Lumpkin, J., gives decided intimation that the doctrine of title by estoppel no longer prevails as against the provision and policy of our registration acts." Bank v. Smith,186 N.C. p. 635; Cowan v. Dale, 189 N.C. 684.
In Boyd v. Typewriter Co., 190 N.C. at p. 799, it is said: "In Ijamesv. Gaither, 93 N.C. 361, it is held: `When a mortgage or deed of trust is registered upon a proper probate, it is held to have the effect of notice to all the world and attaches itself to the legal estate, and is notice to a subsequent purchaser from the mortgagor. Flemming v. Burgin, 2 Ired. Eq., 584; Leggett v. Bullock, Busb., 283; Robinson v. Willoughby, 70 N.C. 358.'Collins v. Davis, 132 N.C. 106; Dill v. Reynolds, 186 N.C. 293;Bank v. Smith, 186 N.C. 642."
In this jurisdiction, under C. S., 3311, the registration of deeds of trust and mortgages on real and personal property have been held of prime importance. Boyd v. Typewriter Co., supra. It gives stability to business. When properly probated and registered, they are constructive notice to all the world. Creditors or purchasers for a valuable consideration from the donor, bargainor or mortgagor, obtain no title as against a properly probated and registered conveyance, sufficiently describing the property. Ordinarily the cases in this jurisdiction where a purchaser for a valuable consideration from the donor, bargainor or mortgagor obtains title after the registration of the mortgage, it is bottomed on agency — express or implied — as where the mortgagee by the terms of the mortgage or the nature of the property conveyed, either in express language or by implication, gives the mortgagor the right to dispose of the property on which he has a lien.
In Bynum v. Miller, 89 N.C. at pp. 395-6, it is said by Ashe, J.: "The consent then given by plaintiff to defendant to replenish the stock from time to time, gave him the right to sell, and constituted him his agent for that purpose; and especially is this to be so considered when the deed provides that the entire stock on hand on 15 November, including *Page 158 
not only the original stock, but the stock as increased by new purchases, should belong to the mortgagee." See Etheridge v. Hilliard, 100 N.C. 250;Merritt v. Kitchin, 121 N.C. 148; Edwards v. Supply Co., 150 N.C. 171;R. R. v. Simpkins, 178 N.C. 276.
In Rogers v. Booker, 184 N.C. at p. 186, it is said: "This was not the case of a mortgage upon a stock of goods which was left in the hands of the mortgagor for sale. There was nothing to indicate in the remotest degree such state of facts. The evidence is that Carr E. Booker borrowed money from the plaintiff and gave him a mortgage upon a single automobile as security, and that this mortgage was duly and properly recorded, and upon the charge the jury found that Carr E. Booker had no authority, express or implied, to sell it free from the lien of the recorded mortgage."
The principal case relied on by defendant is Boice v. Finance andGuaranty Co., 127 Va. 563. In the case of Rudolph v. Farmers Supply Co.Inc., 131 Va., at p. 313, 108 S.E. 638, the same Court said: "The question presented was, who had the superior claim to the automobile — Boice or the guaranty company? Boice was a subsequent purchaser for value from Gordon, without actual notice of the existence of the mortgage. The Court held that `If (when) the owner stands by and permits a seller who is a licensed dealer in such goods to hold himself out to the world as owner, to treat the goods as his own, to place them with other similar goods of his own in a public show room, and to offer the same indiscriminately with his own to the public, he will be estopped by his conduct from asserting his ownership against a purchaser for value without notice of his title. The constructive notice furnished by the recorded mortgage, or deed of trust in such cases, is not sufficient. The act of knowingly permitting the goods to be so handled and used by the seller in the ordinary and usual conduct of his business, is just as destructive of the rights of the creditor as if such permission has been expressly granted in the mortgage or deed of trust.' Boice v. Finance and Guaranty Co.,127 Va. 563, 102 S.E. 591, 10 A.L.R., 654. It will be noted in this case that the owner loses his lien because his conduct estops him from enforcing it. . . . (p. 314). The controlling principle asserted and established inBoice v. Finance and Guaranty Co., supra, is that the company's conduct was as destructive of its right to assert its lien as if it had expressly included in the mortgage provisions adequate to defeat its purpose."
Chapter 236, Public Laws of 1923, requiring a certificate of the transfer of title to an automobile to be issued to purchaser by the Secretary of State (now Commissioner of Revenue), making its violation a misdemeanor, is a penal statute and strictly construed, in pari materia *Page 159 
with out registration laws, C. S., 3311, 3312, relating to the registration of mortgages. It does not repeal the latter statutes so as not to require the registration of title-retaining contract to secure the balance due on the purchase price of an automobile, as against subsequent purchaser for value, and no notice however formal is sufficient to supply that of registration required by the statute. Carolina Discount Corporation v.Landis Motor Co., 190 N.C. 157.
Whatever may be the holding elsewhere, the registration of mortgages are favored in this jurisdiction. The mortgage in the present action was to secure a loan made at the time. The mortgaged property was carefully described in the mortgage, the kind of car and the serial and motor numbers. The mortgage was recorded before the sale to defendant. An attorney examined the title before the loan was made. Under the facts and circumstances of this case, we cannot hold that the fact that the automobiles were in the show or display room of Lane, a licensed dealer, for sale to the general public, that the purchase by defendant for value gave him a superior title to plaintiff, who had a valid chattel mortgage duly recorded on same. There is no sufficient evidence to show an implied agency giving the mortgagor a right to sell free from the mortgage lien. Defendant took title subject to the mortgage lien.
As to the second question: C. S., 3560, is as follows: "The board of county commissioners, at the expense of the county, shall cause to be made and consolidated into one book a general index of all the deeds and other documents in the register's office, and the register shall afterwards keep up such index without any additional compensation.
C. S., 3561: The register of deeds shall provide and keep in his office full and complete alphabetical indexes of the names of the parties to all liens, grants, deeds, mortgages, bonds and other instruments of writing required or authorized to be registered; such indexes to be kept in well-bound books, and shall state in full the names of all the parties, whether grantors, grantees, vendors, vendees, obligors or obligees, and shall be indexed and cross-indexed, within twenty-four hours after registering any instrument, so as to show the name of each party under the appropriate letter of the alphabet; and reference shall be made opposite each name, to the page, title or number of the book in which is registered any instrument. A violation of this section shall be a misdemeanor."
Davis v. Whitaker, 114 N.C. 279, was overruled in Ely v. Norman, 175 N.C. at p. 299 (concurring opinion), and it was held: "That the indexing of deeds is an essential part of their registration, just as much so as the indexing of judgments is an essential part of their docketing as is held inDewey v. Sugg, 109 N.C. 328." Fowle v. Ham, 176 N.C. 12; Hooper v.Power Co., 180 N.C. 651; Trust Co. v. Currie, 190 N.C. 260; Clement v.Harrison, 193 N.C. 825 *Page 160 
It was held in the Clement case, supra, at p. 828: "C. S., 3560, apparently contemplates that the index provided by the county commissioners shall be one book, constituting a general index of all instruments admitted to registration or required to be registered. The only requirement of cross-indexing specified in the statute is that such index and cross-index shall `show the name of each party under the appropriate letter of the alphabet, and reference shall be made opposite each name to the page, title, or number of the book in which is registered any instrument.'"
In the instant case the chattel mortgages in each chattel-mortgage book are indexed and cross-indexed in an index in the front of that book. It may be burdensome to the investigator, but we think, under the facts and circumstances of this case, that there has been a substantial compliance with the statutes. Defendant, if he had investigated before purchasing the automobile, could have easily found the chattel mortgage as he didafterwards.
In speaking to the subject of protecting creditors and subsequent purchasers for value, the necessity of indexing and cross-indexing, Hoke,J., in the Ely case, supra, at p. 298, says: "In cases upholding this view it is held: `That an index will hold a subsequent purchaser to notice thereof if enough is disclosed by the index to put a careful or prudent examiner upon inquiry, and if, upon such inquiry, the instrument would have been found. Jones v. Berkshire, 15 Iowa 248.'"
For the reasons given, the judgment below is
Reversed.