# Richmond

## C. I. T. CORPORATION AND UNIVERSAL CREDIT COMPANY V. W. J. CROSBY & COMPANY, INC.

February 26, 1940.

Record No. 2140.

Present, All the Justices.

The opinion states the case.

*Vivian L. Page,* for the plaintiffs in error.

*L. B. Cox,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

The question here involved is the relative priority of the lien of a conditional sales contract on a motor vehicle duly recorded under the laws of the State of Georgia, where the vendee resides, and the lien of an attachment levied on such motor vehicle while it was being operated in Virginia.

The facts are undisputed. On July 9, 1938, W. J. Crosby & Company, Inc., a Virginia corporation, filed in the court below a petition for attachment against O. L. Williams, a resident of Georgia, seeking to recover the sum of $1,125.50 admittedly due. On July 19th the attachment was levied on a 1938 Ford truck and a Nabor trailer which were in the possession of the defendant. Subsequently the attachment was served personally on the defendant.

Several weeks later C. I. T. Corporation, a West Virginia corporation, filed in the proceedings an interpleader petition alleging that it and not the defendant, Williams, was the owner of the Ford truck which had been attached. On the same date the Universal Credit Company, a Delaware corporation, filed a similar petition alleging ownership of the trailer which had been attached. The petitioners prayed

that the attachments which had been levied on their respective properties be dismissed.

The parties having been convened by proper process and having waived trial by jury, the matter was heard and determined by the court.

It developed that the Ford truck had been sold to the defendant, Williams, by the Strickland Motor Company of Cordele, Georgia, under a conditional sales contract dated June 27, 1938. This contract had been assigned to C. I. T. Corporation, and under it there was due a balance of $839.40 as of the date the attachment was levied.

It was also shown that Williams had purchased the Nabor trailer from one C. E. McElmurray on February 1, 1938, subject to a conditional sales contract dated August 23, 1937. This contract had been assigned to the Universal Credit Company, to which there was due a balance of $474.98 as of the date of the levy of the attachment.

Both of these conditional sales contracts had been duly recorded in accordance with the laws of the State of Georgia. Under the laws of that State they were valid prior liens as against subsequent purchasers and creditors of Williams.

Neither of the contracts was recorded in Virginia, nor was either vehicle registered therein.

The defendant, Williams, was engaged in the fish and oyster business at Cordele, Georgia. On March 29th, April 4th, 18th, 25th, May 2nd, 9th, 17th, 24th, 30th, June 22nd, and July 4th, 7th, 19th, his motor vehicles were sent to Norfolk for the purpose of loading and transporting seafood to his place of business at Cordele. Except for the trip of July 19th, when the attachment was levied on the truck and trailer, the record does not disclose the identity of the vehicles which the defendant had operated to and from Norfolk. However, as we shall presently see, this is immaterial.

The trial court held that the lien of the attachment was prior to the liens of the two conditional sales contracts. This was predicated upon the finding that in operating his

motor vehicles in Virginia as often as four times in a month for purposes other than purposes of pleasure, and in operating such vehicles in this State as often as three times in any one calendar month without obtaining the required temporary registration of such foreign vehicles when first entering this State, Williams, the non-resident owner, became liable for permanent registration of said vehicles with the Division of Motor Vehicles of Virginia; and that since the two vehicles upon which the attachment had been levied had not been so registered, and since the owner had not obtained the necessary certificates of title showing the liens or encumbrances thereon, the liens of the two conditional sales contracts were void as to the attaching creditor.

The present writ of error granted to the intervening petitioners challenges the correctness of this conclusion.

Section 23 of the Motor Vehicle Code (Acts 1932, ch. 342, p. 626, as amended by Acts 1934, ch. 265, p. 387; Michie's Code of 1936, section 2154 (70)), deals with the registration by nonresidents of foreign motor vehicles operated in this State. It provides in part as follows:

"Except as provided and permitted under the provisions of subsection (a-2) of this section a non-resident owner[1] of a foreign motor vehicle, trailer or semi-trailer, which is regularly operated in this State, or from a point or points without this State to a point or points within this State, or from a point or points within this State to a point or points without this State, or through this State, for purposes other than purposes of pleasure, shall, unless otherwise provided in this section, register such vehicle and pay the same fees therefor as are required with reference to like vehicles owned by residents of this State. Any such owner who operates or permits to be operated one or more such vehicles either simultaneously or alternately as often as four times in any one month, shall be considered to be regularly operating such vehicle and/or vehicles in this State.

[1] "Owner" includes a vendee under a conditional sales contract. Motor Vehicle Code, section 2(m); Acts 1932, p. 615; Acts 1934, p. 382; Michie's Code of 1936, section 2154 (49) (m).

"Such non-resident owner, however, may operate or permit the operation of foreign vehicles in this State as often as three times in any one calendar month without the necessity of obtaining Virginia registration of and licenses for foreign vehicles so operated only upon the following condition:

"The owners or the operators of such foreign vehicles operated in this State shall, upon first entering this State, temporarily register on forms prepared and distributed by the division, at the first available registration point after entering this State, with the chief of police of any city or town, with the clerk of a circuit, corporation or hustings court, or with the division, the foreign vehicles so operated in this State, stating the make of such foreign vehicles, the motor number and serial number or other identification number of such foreign vehicles, the license number assigned to such foreign vehicles by the State, district or country in which such foreign vehicles are registered, and the name and permanent address of the owners of such foreign vehicles.

" * * * Failure to procure such temporary registration cards, or to have such registration cards in possession at all times, or to punch out the·date as herein required, shall serve to cancel the privileges extended to non-residents under this subsection and to render such non-residents liable for the immediate registration of the foreign vehicles so operated."

■ It is well settled that the police power of a State to regulate the use of motor vehicles on its highways extends to non-residents as well as residents, and that it may prohibit the use of its highways by a foreign motor vehicle unless and until it is licensed in accordance with its laws. *Hendrick* v. *Maryland,* 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; *Kane* v. *New Jersey,* 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; *Hess* v. *Pawloski,* 274. U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091 (affirming 250 Mass. 22, 144 N. E. 760, 35 A. L. R. 945) ; *Storaasli* v. *Minnesota,* 283 U. S. 57, 51 S. Ct. 354, 75 L. Ed. 839.

■■ The statute just quoted is such a police regulation and is enacted for the protection of the public. *Thomas* v. *Mullins*, 153 Va. 383, 149 S. E. 494. Its manifest purpose is to give the State control over foreign vehicles which are "regularly operated in this State" for commercial purposes and to place them on the same footing as vehicles owned by residents of this State. In plain terms the act provides that when a nonresident operates one or more of his vehicles other than for pleasure into or through this State "as often as four times in any one month," he is deemed "to be regularly operating such vehicle and/or vehicles in this State," in which event he is required to register such vehicles and to pay the same fees therefor as are exacted by the State "with reference to like vehicles owned by residents of this State."

The act further permits a nonresident to operate his "foreign vehicles in this State as often as three times in any one calendar month without the necessity of obtaining Virginia registration" thereof, provided temporary registration is made of such foreign vehicles when they first enter the State, in the manner prescribed in the statute. Failure to obtain such temporary registration subjects such vehicles to permanent registration with the Motor Vehicle Department.

The record in the instant case shows that the nonresident owner, over a period of several months, was operating his vehicles for commercial purposes into Virginia as often as four times in a single month. Under the plain terms of the statute this necessitated the registration of the vehicles used in such operations and the payment of the "fees therefor as are required with reference to like vehicles owned by residents of this State." Admittedly this was not done.

Nor did he make a temporary registration of his foreign vehicles with the necessary authorities, although said vehicles were operated in this State more than three times in a calendar month. Such a violation of the statute subjected him to the immediate registration of his foreign vehicles

used in such operations and the payment of the similar fees therefor required of resident owners.

■■ It is true that the record does not disclose that the particular vehicles which were attached in the present proceedings were used in each of these operations. This, we think, is immaterial. The language of the statute is, "Any such owner who operates or permits to be operated one or more such vehicles either simultaneously or alternately as often as four times in any one month, shall be considered to be regularly operating such vehicle and/or vehicles in this State." What the State here seeks to control is the regular and continued operation by a nonresident of his foreign motor vehicles on its highways. A nonresident can not escape the provisions of the act by operating a number of vehicles and by alternately sending them into this State. When he sends one or more of his commercial motor vehicles into this State more than the number of times per month permitted by the statute, then thereafter each and every vehicle used by him in such operation falls within the purview of the statute even though a particular vehicle may be on its first trip into this State.

Having reached the conclusion that it was the duty of Williams, the owner of the motor vehicles operated in Virginia, to register them in this State in the same manner as if he had been a resident, what was the effect of his failure to do so?

With certain exceptions not here material, Motor Vehicle Code, section 12 (Acts 1932, p. 620; Michie's Code of 1936, section 2154 (59)), provides that every person "owning[2] a motor vehicle, trailer or semi-trailer intended to be operated upon any highway in this State shall, before the same is so operated, apply to the division for and obtain the registration thereof and a certificate of title therefor."

"Every application for a certificate of title shall contain a statement of the applicant's title and of all liens or encumbrances upon said vehicle and the names and addresses of all persons having any interest therein and the nature of

[2] See note 1, *ante.*

every such interest." Motor Vehicle Code, section 14(b), (Acts 1932, p. 621; Michie's Code of 1936, section 2154 (61) (b)).

Motor Vehicle Code, section 17 (Acts 1932, p. 622; Acts 1934, p. 383; Acts 1938, ch. 203, p. 327; Michie's Code of 1936, section 2154(64), as amended), provides that the division, upon receiving an application for a certificate of title to a motor vehicle showing the liens or encumbrances thereon, shall issue to the owner thereof a certificate of title showing upon its face all liens or encumbrances disclosed by such application and whether possession is held by the owner under a lease, contract, or conditional sale or other like agreement.

This section further provides: "Said certificate of title, when issued by the division showing a lien or encumbrance, shall be deemed adequate notice to the Commonwealth, creditors and purchasers that a lien against the motor vehicle exists and the recording of such reservation of title, lien or encumbrance in the county or city wherein the purchaser or debtor resides or elsewhere is not necessary and shall not be required. Motor vehicles, trailers or semi-trailers registered or for which a certificate of title shall have been issued under this act shall not be subjected to, but shall be exempt from, the provisions of sections fifty-one hundred and eighty-nine and fifty-two hundred and twenty-four of the Code of Virginia, as amended, nor shall recordation of such lien in any other place for any other purpose be required and shall have no effect."

The section also provides that, "liens shown upon such certificates of title issued by the division pursuant to applications for same, shall have priority over any other liens against such motor vehicle, trailer or semi-trailer, however created and recorded."

In *C. I. T. Corporation* v. *Guy*, 170 Va. 16, 25, 195 S. E. 659, we held that a conditional sales contract was an encumbrance within the meaning of this section.

In *Maryland Credit Finance Corporation* v. *Franklin Credit Finance Corporation*, 164 Va. 579, 180 S. E. 408,

we held that a lien not shown on the certificate of title to a truck, owned by a resident, was not recorded as required by statute and was subordinate to the lien of an execution levied on the truck.

As we have seen, the statute places a non-resident owner who regularly operates his commercial motor vehicles in Virginia on the same footing as a resident owner of similar vehicles. It necessarily follows, then, that since the owner, Williams, failed to register his motor vehicles in Virginia and failed to obtain certificates of title showing the liens thereon, as required by our laws, such liens were not recorded in Virginia and were, therefore, subject to the lien of the attachment.

Nothing which we have said here in any way conflicts with what was said in *C. I. T. Corporation* v. *Guy, supra.* In that case a resident of South Carolina had purchased an automobile under a conditional sales contract duly recorded in that State. While passing through Virginia *en route* to Maryland, his car was involved in a collision, as a result of which it was attached. We held that, since the automobile had not been permanently removed to Virginia but was only temporarily in this State, it was not necessary under our statute that it be registered in this State or that the conditional sales contract be recorded here in order to protect the lien thereof. Indeed, in that case we recognized (170 Va. at page 25, 195 S. E. at page 662) that under certain conditions registration is required of "nonresidents who operate here."

It is argued that the interpretation which we have placed on the Virginia statute in the present case will work a great hardship on an innocent lienor who has no way of knowing that a nonresident owner of a foreign vehicle will bring it into Virginia and subject it to the provisions of our laws.

The obvious reply is that this is one of the risks a lienor necessarily assumes when he lends money on a motor vehicle which every one knows may be and frequently is removed from one State to another. Moreover, it is a matter of common knowledge that many if not all of the States

have laws which regulate the operation of foreign vehicles within their borders and impose penalties on such vehicles for the violation thereof.

In our opinion the judgment of the lower court is plainly right and accordingly it is

*Affirmed.*