## CIRCUIT COURT OF STAFFORD COUNTY

New South Investment Co.

v.

Louis Graninger
and Barbara Graninger

October 17, 1960

BY JUDGE JOHN D. BUTZNER, JR.

This is an action of detinue brought by New South Investment Company, plaintiff, to recover possession of a house trailer from Louis Graninger and Barbara Graninger. The testimony was not transcribed, but it can be stated briefly in narrative form.

On January 29, 1958, Alexander E. MacLellan, Jr., a United States Marine, purchased from Grand Mobile Home Sales, Inc., in Jacksonville, North Carolina, the house trailer which is the subject of this litigation. MacLellan made a down payment, and the balance of $4,830.00 was secured by a conditional sales contract (Pl. Ex. 3), which was assigned to the plaintiff, a company engaged in financing the sale of house trailers.

On August 9, 1958, MacLellan applied to the North Carolina Department of Motor Vehicles for a title to the trailer. (Pl. Ex. 2.) His application showed the lien held by the plaintiff. In due time, a certificate of title showing the lien was issued. The plaintiff held the certificate. A photostatic copy of this certificate was introduced by agreement of counsel as plaintiff's Exhibit 1.

On September 11, 1958, the plaintiff was notified that MacLellan had moved from Jacksonville, North Carolina, to Watson's Trailer Park, Dumfries, Virginia. (Def. Ex. 3.)

MacLellan made various payments to plaintiff, generally keeping his account current to May 13, 1959, when the last payment was made. Defendant's Exhibit 4, which is plaintiff's ledger sheet, shows the payments and also the Virginia address of MacLellan.

After the June and July 1959 payments were not received, H. B. Moorehead, an officer of plaintiff who was in charge of this account, phoned MacLellan. The call was probably made in August, although it could have been in July. MacLellan told Moorehead that he had traded the trailer to Delaware Valley Trailer Sales, Falmouth, Virginia. Moorehead immediately phoned Delaware Valley Trailer Sales and advised them of plaintiff's lien. He was asked to compute the amount due which he promptly did and was told that the balance due would be sent to him. Moorehead testified that while he did not actually know where the trailer was, he felt sure it was on Delaware Valley Trailer Sales lot for sale.

After a week had passed without receipt of the payment, Moorehead called MacLellan and asked him to investigate. Shortly thereafter, MacLellan reported to Moorehead that the trailer was not on the Delaware Valley Trailer Sales lot in Falmouth.

MacLellan's trailer had been brought to the Delaware Valley Trailer Sales lot in May 1959, and it was promptly put on sale. In September 1959, the trailer was taken to the Fredericksburg Fairground. By arrangement with officials of the Fair, it was used as an office for the officials, but Delaware Valley Trailer Sales could show it for sale. The general public, however, was not admitted into it as in the case of a model trailer. Delaware Valley Trailer Sales did have a sales display at the Fair. The trailer was shown to Mrs. Mary D. Graninger, mother of Louis Graninger, one of the defendants, and she told her son about it.

Louis Graninger, one of the defendants, went to the fairgrounds in September 1959. He was shown the trailer by James Woodmancy, a salesman for Delaware Valley Trailer Sales. The trailer had dealer's license tags on it. Graninger knew that the trailer had been used, but he was not told that any liens were against it.

Graninger arranged with Woodmancy to purchase the trailer for $3,800.00, which he borrowed from his mother. He paid this sum in two installments, the first in the amount of $1,600.00 on September 18, 1959 (Def. Ex. 1), and the second in the amount of $2,200.00 on September 25, 1959 (Def. Ex. 2). He took possession of the trailer on September 25, 1959. He knew a certificate of title was needed for a car and believed one was needed for a trailer. He asked about the certificate of title and was assured by Woodmancy he would receive it in a week or ten days.

Woodmancy testified that he showed the trailer to Graninger and sold it to him. Woodmancy further testified that he did not know of any liens against the trailer and that he did not tell Graninger that it was encumbered. He did not recall talking to Graninger about the title, but it is possible Graninger could have asked and he would have said the certificate would be delivered in a week or ten days. He did remember Graninger asking for the title about a week after possession was delivered. On this occasion, Woodmancy inquired of his employer, a man named Versanger, who told him the title would be along. Woodmancy later learned from MacLellan that the lien had not been paid.

Graninger first learned that the lien existed after he had purchased the trailer. This information was sent to him in a letter by Mr. John A. Jamison, attorney, who wrote on behalf of New South Investment Company.

The Delaware Valley Trailer Sales was a partnership owned by a Mr. and Mrs. Versanger. Some time after the sale to Graninger, Woodmancy learned of this and other irregularities, and he thereupon quit working for Delaware Valley Trailer Sales. The company is now in bankruptcy, and Versanger was last known to be in Philadelphia.

This case is concerned with two issues: first, the validity of the plaintiff's lien, to which is closely related the question of estoppel; and second, the status of the defendants, that is, whether they were purchasers without notice of the lien.

It is unquestioned that the mobile home is a trailer within the definition of the Motor Vehicle Code of Virginia, and both parties in their arguments and briefs proceeded upon this fact.

The plaintiff held a certificate of title issued by the Department of Motor Vehicles of the State of North Carolina to MacLellan which showed plaintiff's lien in the form of a conditional sales contract. The plaintiff did not offer proof of the North Carolina law. No application was ever made for a certificate of title in Virginia, and the lien was never recorded in Virginia.

The plaintiff relies upon *C.I.T. Corp. v. Guy*, 170 Va. 16, 195 S.E. 659 (1937), and *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 92 S.E.2d 359 (1956). Both cases involve foreign conditional sales contracts, which were not recorded in Virginia. In the *Guy* case, the automobile was being driven through Virginia to Baltimore when it was involved in an accident and attached. The Supreme Court of Appeals held that the conditional sales contract was superior to the attachment. In the *Kaplan* case, the car had been in Norfolk for less than four months when the owner erased the notation of the conditional sales contract on the certificate of title and sold the car to a dealer. The Supreme Court of Appeals held the dealer liable to the financing company

for conversion. In the *Guy* case, the finance company had no knowledge of the trip to Virginia and, of course, gave no consent to its being driven into the state. In the *Kaplan* case, it is not clear that the finance company knew exactly where the car was, but it is clear that the car was not used with the consent of the company. The company obtained the address of the owner, which was a fleet post office, and wrote him that he was in default and instructed him to store the car and refinance it. It also refused an extension of time for payment. In short, the company did not consent to the car's removal.

It, therefore, appears that the factual situation in the case at bar differs greatly from the situation in the *Guy* and *Kaplan* cases. Here, the trailer had been in Virginia from at least September 11, 1958, to May 1959, approximately eight months, when MacLellan traded it to Delaware Valley Trailer Sales, and it had been in Virginia for more than a year when the defendants purchased it. Moreover, the plaintiff knew the trailer was in Virginia, for on September 11, 1958, Mrs. MacLellan wrote the plaintiff of their new address. (Def. Ex. 3.)

The conditional sales contract upon which the plaintiff relies provides in part that MacLellan agrees not to remove the trailer from the county in North Carolina mentioned in the contract without first notifying the plaintiff of the movement and furnishing his new address and without obtaining the plaintiff's written consent. Default on any obligation entitled the plaintiff to declare the full balance due and to repossess the trailer.

The plaintiff, however, did not enforce the provisions of its contract or make any effort to record its lien in Virginia. Nor did it request MacLellan to make application for a Virginia certificate of title showing its lien. Instead it simply noted the change of address to Virginia on its records (Def. Ex. 4), and thereafter, continued to receive the monthly payment. It consented to the change of location more than a year before the defendants purchased the trailer.

In *C.I.T. Corp. v. Guy*, 170 Va. 16, 195 S.E. 659 (1937), the Supreme Court of Appeals based its decision upon two principles. First, a conditional sales contract is not an encumbrance within the meaning of § 55-99 Code of Virginia 1950 (formerly § 5197), and that § 55-88 (formerly § 5189) "applied to intrastate movements of property only and did not cover conditional sales contracts which need not be recorded in Virginia if duly recorded elsewhere." Second, the Supreme Court of Appeals held that the automobile in question, which was merely being driven through the state, was not "removed" to Virginia within the meaning of § 55-99 Code of Virginia 1950.

In *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 92 S.E.2d 359 (1956), the Supreme Court of Appeals again mentioned the distinction

between conditional sales contracts and other forms of encumbrances with respect to § 55-99 Code of Virginia 1950. This distinction was not emphasized, however. The decision was based primarily upon the fact that the car had not been "removed into" and "located in" Virginia within the meaning of § 55-99. The Supreme Court of Appeals said at 198 Va. 72, 92 S.E.2d 363:

> It is therefore settled that before recordation is required under Code § 55-99, the property brought into Virginia must come to rest and be located here to the extent of acquiring a new situs. The acquisition of a new situs signifies something more than the temporary or the transient presence of the property in this state. It implies some degree of permanency, and unless this requirement is established, it cannot be said that the property has been "removed into" and "located in" Virginia as contemplated by the statute. [Citing cases.]
>
> We hold that the evidence in the instant case is insufficient to prove that the automobile temporarily brought into Virginia by Sailor Bailey was "removed into" and "located" here within the meaning of Code § 55-99, and that insofar as this statute is concerned, the appellant's conditional sales contract is valid and enforceable in Virginia.

The letter which Mrs. MacLellan wrote the plaintiff September 11, 1958 (Def. Ex. 3) and the entry made on plaintiff's ledger sheet (Def. Ex. 4) show an unqualified change of location. Nothing in these papers indicates a mere temporary or casual transient presence of the property in the state. Furthermore, the fact that MacLellan used the trailer in Virginia from September 1958 until May 1959 when he disposed of it in Virginia confirms the fact that the trailer had come to rest and was located here to the extent of acquiring a new situs. Moreover, this change of situs was made with the full knowledge and consent of the plaintiff.

The Court, therefore, finds that the trailer was removed into and located in Virginia with the knowledge and consent of the plaintiff before the defendants made their purchase.

A conditional sales contract is an encumbrance within the definition of the Motor Vehicle Code of Virginia, and, as the Supreme Court of Appeals has pointed out, § 46-71 Code of Virginia 1950 (now § 46.1-71, Replacement Vol. 7 Code of Virginia 1950) applies to residents and non-residents who operate here. From the registration provision of the Motor Vehicle Code are excluded "non-residents who are never in Virginia except upon some casual occasion." *C.I.T. Corp. v. Guy*, 170 Va. 16, 25, 195 S.E. 659, 662 (1937);

*Universal C.I.T. Credit Corp. v. Kaplan,* 198 Va. 67, 74, 92 S.E.2d 359, 364 (1956).

As noted above, however, the trailer in the case at bar acquired a situs in Virginia. Its registration would impose no undue burden on its owner for he was not a "nonresident in Virginia except upon some casual occasion," and thus he did not fall within the terms of the exclusion.

It should be noted that the Motor Vehicle Code contains several provisions concerning nonresidents. But it appears that these provisions are not applicable. Thus, § 46.1-184, Replacement Vol. 7 Code of Virginia 1950 (formerly § 46-117) which was the basis of the decision in *C.I.T. Corp. v. W. J. Crosby & Co.,* 175 Va. 16, 17 S.E.2d 107 (1940), applies to vehicles operated for purposes other than pleasure. The evidence in this case does not show that the trailer can be so classified.

Sections 46-112 and 46-115 Code of Virginia 1950, which were discussed in *Universal C.I.T. Credit Corp. v. Kaplan, supra,* pertained to passenger cars. These statutes were omitted in the 1958 revision of the Code. However, § 46.1-132 Replacement Vol. 7 Code of Virginia 1950 does allow temporary operation of passenger cars for a period of six months. But the trailer in question does not fall within this grant of immunity. No question of reciprocity has been raised by the pleadings or proof, so the general provisions pertaining to this in Article 7, Title 46, Replacement Vol. 7, Code of Virginia 1950 are not applicable.

The evidence showed that the trailer was operated over the highways of the state. While it is probably not of any great significance, the only inference that can be drawn from the evidence is that the plaintiff knew of its movement over the highways on at least two occasions, that is, when it was taken from North Carolina to Watson's Trailer Park in Dumfries, Virginia, and when it was taken from the Park to the Delaware Valley Trailer Sales lot in Falmouth.

The trailer, therefore, should have been registered pursuant to § 46.1-41 Replacement Vol. 7, Code of Virginia 1950, and the lien shown pursuant to § 46.1-69, which would have provided adequate notice under § 46.1-71.

The plaintiff contends that it was unable to record the lien for the reason that only the vendee, MacLellan, could register the trailer, and that it was helpless to protect its interest. The evidence shows, however, that the plaintiff held the North Carolina certificate of title. No request was made to MacLellan to send the plaintiff an application for registration, which the plaintiff could then have forwarded to the Division of Motor Vehicles in order to secure a Virginia certificate of title showing its lien. Under § 46.1-74 Replacement Vol. 7, Code of Virginia 1950 (formerly § 46-74), the plaintiff could have held the new certificate. Nor did the plaintiff attempt to record the conditional

sales contract. Since the plaintiff never made any effort to protect its lien by compliance with the Virginia law, it is not in a position to defend on the ground that MacLellan made no effort. In *C.I.T. Corp. v. W. J. Crosby & Co.*, 175 Va. 16, 7 S.E.2d 107 (1940), the same defense was urged without avail. Moreover in that case, the lienor occupied a stronger position because it was ignorant of the movement to Virginia.

The Court, for the reasons stated, is of the opinion that the conditional sales contract was not valid and effective in Virginia against a purchaser for value without notice.

The question of estoppel has been briefed and argued by counsel for both parties. Suffice it to say that even if it were conceded that the conditional sales contract were valid, the Court is of the opinion that under the holdings in *Boice v. Finance & Guar. Corp.*, 127 Va. 563, 102 S.E. 591 (1920), and *General Credit, Inc. v. Winchester, Inc.*, 196 Va. 711, 85 S.E.2d 201 (1955), the plaintiff is estopped to assert its lien.

MacLellan told Moorehead, an officer of the plaintiff company, possibly in July — probably in August 1959 — that he had traded the trailer to Delaware Valley Trailer Sales. Moorehead, acting within the scope of his employment, called Delaware Valley Trailer Sales and confirmed that they had the trailer. He made no demand for the trailer and left no instructions that it not be sold. He made no effort to repossess it. Instead, he computed the amount of the balance due and agreed that this could be sent to the plaintiff by Delaware Valley Trailer Sales in discharge of the lien. He testified that he felt sure that the trailer was on the Delaware Valley Trailer Sales lot for sale. Other than having MacLellan investigate, the evidence fails to disclose any action taken by the plaintiff to protect its interest.

The Court finds that the trailer was left with a trailer dealer on a sales lot for sale with the knowledge and consent of the lienholder. This was done at the latest in August 1959. The defendants did not complete their purchase and take possession until September 25, 1959.

There is a distinction between this case and *Boice v. Guar. Corp., supra*, and *General Credit, Inc. v. Winchester, Inc., supra*. The dealer in this case did not create the lien as did the dealers in the other two cases. The Court is of the opinion that this distinction is insufficient to affect the estoppel. The reason for this conclusion is found in *Rudolph v. Farmers Supply Co., Inc.*, 131 Va. 305, 108 S.E. 638 (1921). There, as in the case at bar, the dealer did not create the lien, a prior purchaser, occupying MacLellan's position, did. The Supreme Court of Appeals did not base its decision for the lienholder on this distinction from the *Boice* case. Rather, the case turned on the fact that the lienholder "was not aware of the sale to [the dealer] and did not 'stand by and permit'

[the dealer] to place the car in his salesroom and offer the same for sale to the public." 131 Va. 314, 108 S.E. 640. Exactly what the lienholder did not do in the *Rudolph* case, the lienholder did do in the instant case.

The Court, therefore, holds that even if the conditional sales contract be deemed valid, the plaintiff is estopped to enforce its lien.

We come now to the second issue in the case which concerns the status of the defendants. When the defendant, Louis Graninger, testified he paid $3,800.00 for the trailer and when he testified that he had no knowledge of the lien, the plaintiff objected on the ground that the answer filed by the defendants did not plead that they were *bona fide* purchasers for value without notice. Examination of the answer shows that the defendants pleaded that they had no knowledge of any prior lien or conditional sales contract and they paid $3,800.00 full purchase price for the trailer. Thus, without using the precise words demanded by the plaintiff, the defendants did plead they were purchasers for value without notice. The Court overruled the objections to the evidence, to which ruling the plaintiff duly excepted.

The plaintiff further contends that the defendants are barred because the trailer was a secondhand vehicle. The plaintiff's contention is clearly stated in its brief as follows: "Under the present statute the fact that a vehicle is secondhand is sufficient to put the purchaser on notice that there may be a lien recorded on the certificate of title, and that if he purchases without seeing such certificate, he does so at his peril."

In support of this position, the plaintiff cites Mr. Justice Chichester's dictum in *Gump Investment Co. v. Jackson*, 142 Va. 190, 194, 128 S.E. 506, 507 (1925), which contains this comment on *Rudolph v. Farmer Supply Co.*, 131 Va. 305, 108 S.E. 638 (1921), "It might well have been added that the very fact that the car was secondhand was sufficient to put the purchaser on notice as to possible liens." The plaintiff also relies upon §§ 46.1-117, 46.1-51, and 46.1-41 Replacement Vol. 7, Virginia Code 1950. The contention is based on the requirement that while a dealer in new cars need not have in his possession a certificate of title for the new car, a dealer in used cars must have in his possession a certificate of title. The plaintiff further contends that the defendant's purchase of a used vehicle knowing, or having reason to believe, that the vendor did not have a certificate of title in his possession is a misdemeanor under § 46.1-5 Replacement Vol. 7, Code of Virginia 1950, and consequently, the defendants should not profit from their wrong.

The evidence in the case is uncontradicted, and the Court finds that the defendants paid $3,800.00 for the trailer. Since the plaintiff alleges that $3,789.00 was due on the trailer, the Court finds that the purchase price was

adequate, full, and fair. There is no suggestion in the evidence or the argument that the defendants paid less than the fair market value.

The evidence also is uncontradicted, and the Court finds, that the defendants had no actual knowledge of the plaintiff's conditional sales contract.

The issue, therefore, is whether the defendants had constructive notice of the lien because the trailer was secondhand.

There is no evidence to show that the defendants violated § 46.1-5 as contended by the plaintiff, unless the violation can be based on constructive notice.

The Supreme Court of Appeals has considered three cases involving the purchase of secondhand cars with prior liens, *Rudolph v. Farmers Supply Co., supra, Universal C.I.T. Credit Corp. v. Kaplan, supra,* and *McQuay v. Bank and Trust Co.,* 200 Va. 775 (1959). In each of these cases, the court held for the lienholder. But it is significant with respect to the present inquiry that in none of these cases was the decision based on the theory of constructive notice because the car was secondhand. The Supreme Court of Appeals in *McQuay v. Bank and Trust Co.,* 200 Va. 776, 779, defined the issue before it as follows:

> Is a properly recorded lien on a *secondhand automobile* given by a dealer to a bank which left the car in the dealer's possession valid against a purchaser of the car from the dealer's premises for value and *without actual notice of the lien*? [Emphasis added.]

The Court did not base its decision for the lienholder on the theory of constructive notice. The decision was based on the fact that the lienholder did not know, nor was it charged with notice, that the dealer would place the car in stock for sale.

While the facts in the above-mentioned case can be distinguished from the facts in the case at bar, the Court is of the opinion that only actual notice — not constructive notice — defeats the purchaser.

This conclusion is compelling when the reason for the lienholder's estoppel is considered. In *General Credit, Inc. v. Winchester,* 196 Va. 711, 718, 85 S.E.2d 201, 204 (1955), the court said:

> There is no suggestion in § 46-71 or elsewhere in the statutes that they were intended to validate a lien on a dealer's stock of cars, as against an innocent purchaser, or otherwise nullify the principles laid down in the *Boice* case. The decision in that case did not turn upon

the adequacy or inadequacy of constructive notice resulting from the recordation of the chattel mortgage on the car. It was based upon the principle of equitable estoppel despite the adequacy of the constructive notice to purchasers resulting from a proper recordation of the lien. The present case turns upon the same principles.

It might not be amiss to add that whatever the merits of plaintiff's contention concerning a secondhand vehicle properly registered in Virginia, the fact that the trailer was not registered here and the lien recorded in compliance with Virginia law precludes the defendants from being charged with constructive notice.

Since the proceedings in the case were not transcribed by a reporter, one more incident of the trial should be noted in this memorandum. The defendants sought to amend their answer by adding a claim for damage. The amendment was opposed by the plaintiff. The court ruled that under § 8-587, Code of Virginia 1950 and because a bond had been given pursuant to this section, the issue of damages was before the court and the amendment was unnecessary. The plaintiff objected and excepted to this ruling. The defendants offered no objection. The defendants, however, offered no proof of damages.

The Court finds that the defendants are entitled to the trailer. Costs will be assessed against the plaintiff.